STATE OF NEBRASKA, APPELLEE, V. FREDERICK A. CAPLES, APPELLANT.

462 N.W.2d 428

Filed November 16, 1990.    No. 89-1284.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Marie C. Pawol for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

The defendant, Frederick A. Caples, appeals his conviction, pursuant to Neb. Rev. Stat. § 28-1206 (Reissue 1989), of felon in possession of a firearm.

At about 2 a.m. on March 7, 1989, two uniformed officers from the Omaha Police Division responded to a radio dispatch that shots were fired in the area of 29th Street and Patrick Avenue in north Omaha. The dispatcher informed Officers Howard and Campbell that the suspect in the incident was a black male driving a gold-colored BMW. The officers drove to the area and met Officer Hronek, who was making an unrelated traffic stop and had heard part of the dispatch. Officer Hronek and the other two officers stopped their police cruisers in the middle of the street, facing in opposite directions so that the drivers could speak to each other. Howard and Campbell informed Hronek of the description of the car and driver.

While the officers were stopped in the street, a BMW driven by a black male pulled up and stopped behind Howard and Campbell's police cruiser. Howard testified that the car was a light tan or cream-colored BMW. Hronek said, "[T]hat's our man," to Officers Howard and Campbell, approached the car, told the driver about the shooting incident, and asked him to step out of the car. Hronek asked the driver to keep his hands where he could see them and then proceeded to "pat down" the

driver. During the course of the pat-down search, Hronek found a .25-caliber handgun in the left inner coat pocket of the driver. He then placed the driver under arrest. The driver of the BMW was later identified as the defendant-appellant, Caples. Caples had been convicted of a felony in California in 1986.

Caples moved to suppress evidence of the firearm on the grounds that the pat-down search of his person was illegal under the fourth amendment. Caples contended that the search was made without authority because it was warrantless, that the search was not made incident to and following a lawful arrest, that his initial detention and subsequent arrest were made without probable cause, and that the search of his person was conducted without probable cause or consent. There is no record of the district court's denial of the motion, but evidence of the gun was received during the bench trial. Caples was convicted after the issue of his guilt was submitted to the court on the police reports and the testimony received at the suppression hearing. He now appeals his conviction and assigns as error the district court's admission of evidence concerning the firearm.

The trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings are clearly erroneous. *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988); *State v. Gibson*, 228 Neb. 455, 422 N.W.2d 570 (1988).

The fourth amendment guards against unreasonable searches and seizures by the government. See U.S. Const. amend. IV. The Nebraska Constitution has a similar provision. See Neb. Const. art. I, § 7. When an individual has a reasonable and legitimate expectation of privacy in the thing to be searched or seized, he is entitled to be free from unreasonable governmental intrusion. *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Thus, the criteria for judging government intrusions under the fourth amendment are twofold. First, the government must intrude upon the legitimate privacy expectations of the individual. This is the search or seizure. Second, the search or seizure must be unreasonable. A person is not protected by the fourth amendment from *any* government intrusion, but only those actions that are unreasonable.

Whenever a police officer restrains an individual's liberty by force or some show of authority, the officer has "seized" that person for purposes of the fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Additionally, a search of a person's outer clothing in an attempt to find weapons is a "search" under the fourth amendment. *Id*. In this case, Officer Hronek approached the appellant, Caples; asked him to step out of his car, keeping his hands visible at all times; and then searched his outer clothing for weapons. Obviously, Caples had a reasonable and well-recognized expectation of privacy in his physical person. He was not free to walk away from the scene, nor was he free to decline Officer Hronek's pat-down search of his body. Thus, Officer Hronek's actions in this case constituted a search and seizure of Caples. We must now consider whether the search and seizure was reasonable under prevailing fourth amendment standards.

In *Terry v. Ohio, supra*, the U.S. Supreme Court held that when a police officer observes conduct that leads him to believe that criminal activity may be afoot and that the persons involved in that activity may be armed and dangerous, he is entitled for the protection of himself and others to stop those persons and conduct a carefully limited search of the outer clothing of such persons in order to discover weapons which may be used to assault him. This type of search is reasonable under the fourth amendment, and any weapons found during the search may be admitted into evidence against the person from whom they were taken. *Id*. The Court distinguished the "Terry stop" from the situation in which the officer has probable cause to arrest the person and searches incident to that arrest. The Court discussed at length the nature of the government interest in conducting brief investigatory stops and balanced this against the degree of intrusion on individual rights that occurs in a search for weapons where probable cause to arrest for a crime is lacking. The Court then determined that the proper balance of the two interests lies in permitting a reasonable search for weapons by an officer when he has reason to believe he is dealing with an armed or dangerous person, regardless of whether the officer has probable cause to arrest the individual for a crime. The Court also stated that it was

unnecessary that the officer be certain that the suspect was armed; the issue was whether a reasonably prudent man in the circumstances would have believed his safety or the safety of others was in danger. In justifying the intrusion, the officer must be able to point out specific and articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion. *Id.*

This court has closely followed the holding in *Terry* in permitting prearrest protective searches of suspects believed to be armed. See, *State v. Anderson*, 204 Neb. 186, 281 N.W.2d 743 (1979); *State v. DeJesus*, 216 Neb. 907, 347 N.W.2d 111 (1984).

This case fits neatly within the rule in *Terry.* Officers Howard and Campbell heard the dispatch describing the suspect in the shooting as a black male driving a gold-colored BMW and then relayed this information to Hronek. When Caples fortuitously pulled up behind Howard and Campbell's cruiser in the BMW, the officers observed he was a black male and determined him to be an individual matching the description of the suspect wanted in the shooting incident. It was at that time that Hronek "stopped and frisked" Caples.

Under *Terry*, it was reasonable for all the officers to believe that Caples might have been involved in the shooting incident. Caples and the BMW matched the description of the suspect and the car in the shooting. Although Caples claims that his BMW is actually silver, it is certainly possible that it appeared gold or tan at night under streetlights. Caples was also present in the area in which the shooting occurred and was the sole occupant of the BMW. Under *Terry*, these facts were sufficient to lead Hronek to reasonably believe that the driver of the BMW was the same individual involved in the shooting incident. It was reasonable for Hronek to detain and question Caples about the incident.

Furthermore, it was also reasonable for Hronek to believe that Caples might have been armed and dangerous, thus necessitating the pat-down search. The officers were aware that the suspect was armed and had fired shots in the area only a few minutes before. When Hronek observed Caples in his vehicle, nothing occurred to dispel his belief that this was probably the

individual involved in the shooting. It was reasonable for Hronek to conclude that if this was the individual, he was probably armed, had fired shots a short time before, and might fire his weapon again. Therefore, Hronek was justified in conducting the pat-down search in order to protect his safety and that of the other officers. Hronek testified that he did conduct the search for his safety. Hronek briefly patted the outer clothing of Caples and found the weapon. He did not search the BMW or the surrounding area. Only when he found the weapon did he have sufficient probable cause to believe that Caples was the individual responsible for the shooting incident. He then placed Caples under arrest. Because the search was brief, carefully limited to the outer clothing of Caples, and conducted for the officer's safety, it complied with the requirements of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The search and seizure of Caples was justified under the rationale in *Terry, supra*, and was reasonable under the fourth amendment. The evidence of the weapon found on Caples' person was properly admitted by the district court. The district court's judgment is affirmed.

AFFIRMED.