STATE OF NEBRASKA, APPELLEE, V. TYRONE V. HAYES, APPELLANT.

535 N.W.2d 715

Filed August 8, 1995.   No. A-94-1087.

920

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

MILLER-LERMAN and INBODY, Judges, and HOWARD, District Judge, Retired.

MILLER-LERMAN, Judge.

Tyrone V. Hayes appeals the order of the district court for Douglas County which denied his motion to suppress evidence gained as a result of a search of his person and statements made subsequent thereto. For the reasons recited below, we affirm the decision of the district court.

## FACTS

This case involves the admissibility of certain evidence seized from Hayes on January 6, 1994. A preliminary hearing was held in the county court for Douglas County on August 10. Thereafter, in an information filed in the district court for Douglas County on August 11, Hayes was charged with unlawfully and knowingly or intentionally possessing with the intent to deliver 28 grams or more of crack cocaine. See Neb. Rev. Stat. § 28-416(8)(a) (Cum. Supp. 1994). Hayes filed a motion to suppress on September 27. In his motion, Hayes contended that the evidence was seized unconstitutionally.

The district court held a hearing on the motion to suppress on October 20, 1994. At the hearing, the State offered the testimony of Omaha police officer James Quaites. Hayes and Officer John Neaman of the Omaha Police Division testified

for the defense. From the evidence adduced at the preliminary hearing and the suppression hearing, we summarize the following facts:

On the afternoon of January 6, 1994, Quaites was participating in a consensual search for narcotics at a residence located at 3706 Ernst Street in Omaha. Quaites was accompanied by Omaha police sergeant Mark Langan, Neaman, and special agent Bill Nellis of the Federal Bureau of Investigation. The individuals executing the search were wearing civilian clothes under their "raid jackets." The jackets identified in bold letters on the front and back the respective law enforcement agency the individuals represented.

At 2:55 p.m., approximately $1^1/_2$ hours after the search unit arrived at the residence, Quaites heard a vehicle pull up in the driveway. Quaites peered out the window and saw Hayes get out of the car, approach the house, enter the porch area, and knock on the front door. Quaites opened the door and identified himself to Hayes as a police officer. Hayes stepped back, turned, and attempted to run away. According to Quaites, he and Nellis ran after Hayes, apprehended Hayes, and brought him into the house. When asked why he grabbed Hayes as he tried to leave the porch, Quaites stated that it was common procedure to detain an individual who arrives at a residence where a search is being conducted, that he recognized Hayes from previous investigations as a known drug dealer with gang ties, and that he had information that Hayes was currently involved in drug distribution. Notwithstanding his knowledge of the foregoing, Quaites testified on cross-examination that he asked Hayes his name before bringing him into the house.

After bringing Hayes into the house, Quaites asked Hayes if he was carrying any weapons, to which Hayes responded "no." Quaites then told Hayes he was going to conduct a pat-down search. We note that Quaites' testimony at the preliminary hearing is somewhat in conflict with that from the suppression hearing, summarized above, in that at the preliminary hearing he stated that he initially asked Hayes if he had any weapons or contraband on him and then told Hayes that he was "going to conduct a pat-down search on him to make sure that he did not have any on him."

Hayes was wearing a soft, leather-type jacket with pockets. The jacket was large on him and reached his midthigh area. At the suppression hearing, Quaites explained on direct examination that when he executed the pat-down search he felt an object he believed to be a controlled substance in Hayes' left pocket. On cross-examination, Quaites described the "pat-down" search as follows:

Q. . . . And you patted him down. Where did you start when you patted him down?

A. I may have started, I believe, while facing him just up around his chest and arm areas, having him move his hands out, and then I believe I went from one side of his body down and then went to the other side of his body down.

Q. How many times did you pat him down?

A. Maybe — I believe twice.

Q. Did you detect a weapon the first time?

A. No.

Q. And then you still continued to — you patted him down a second time; didn't you?

A. On the area that I felt was controlled substances, I went back up and — to try to confirm, I believe — try to confirm what I thought was controlled substance.

Q. At the time that you went back to confirm that, you knew there wasn't a weapon in that area; is that correct?

A. Yes.

Q. So the purpose that you were doing the pat-down in this area was to get more information about possible drugs?

A. I believe that's correct.

Q. Okay. And you palpated that area with your fingertips? You palpated it?

A. If that's what you call it. I basically rubbed up against it as I was patting him down, if that's what you consider it.

Based on the foregoing, the record is clear that the search of Hayes which occurred at 3706 Ernst Street (the initial search) was composed of two excursions: a pat-down search followed by a search which exceeded a pat-down search.

In contrast to Quaites' description of the initial search, Hayes' testimony at the suppression hearing indicated that the initial search exceeded a pat-down search. Specifically, Hayes testified that Quaites "grabbed" and "yank[ed]" at his coat pockets and pants pockets in order to determine their contents. Quaites did not search the interior of Hayes' pockets during the initial search.

According to Quaites, he handcuffed Hayes after he completed the initial search. In contrast to Quaites' testimony, Hayes testified that Quaites handcuffed him on the porch, before bringing him into the house, and that Quaites conducted the initial search while Hayes was handcuffed. Quaites testified that Hayes was not free to leave after the initial search. Quaites testified that Hayes asked if he could leave, and his request to leave was denied.

After he completed the initial search, Quaites told the other officers that he believed Hayes was in possession of controlled substances, specifically crack cocaine. Neaman then asked Hayes if he could conduct a search of his person, to which Hayes replied "no." Langan then dispatched Neaman to obtain a search warrant for Hayes' person. At that time, Hayes remained handcuffed in the house while the other officers continued the original investigation. Approximately 30 minutes later, after the officers completed their investigation of the residence, they took Hayes to police headquarters, where he remained handcuffed. Neaman arrived with the search warrant in approximately an additional 30 minutes.

Neaman obtained the search warrant by swearing to an affidavit which generally set forth that Neaman had been contacted by a reliable confidential informant (CI) on January 6, 1994, who informed Neaman that within the 24 hours prior to such contact Hayes had large amounts of crack cocaine on his person, that Hayes would be actively selling the crack cocaine in North Omaha, and that the CI had observed Hayes actively selling crack cocaine on numerous occasions in the past several months and also generally set forth that Quaites had conducted a search of Hayes on January 6 and had felt objects which he believed to be crack cocaine in his pockets. Neaman further swore that the CI had previously provided reliable

information to the members of the Omaha Police Division and the Federal Bureau of Investigation regarding the distribution of crack cocaine, and such information had "perfectly matched" information verified by such law enforcement agencies. The affidavit for the search warrant was received into evidence at the suppression hearing.

In regard to the information contained in the affidavit, Neaman testified unequivocally at the suppression hearing that before Hayes arrived at the residence at 3706 Ernst Street, Neaman had informed Quaites of what he had learned about Hayes from the CI. Although the record reflects that no narcotics were actually found in the house, Neaman apparently was not aware of this information at the time he obtained the warrant.

When Neaman arrived at police headquarters with the signed search warrant, the officers completely searched Hayes. The officers found Hayes to be in possession of what proved to be approximately 97.5 grams, or $3^1/_2$ ounces, of crack cocaine, a pager, and a gram scale. At that time, Hayes was read his *Miranda* warnings and agreed to answer questions. The questioning of Hayes revealed that he was intending to sell the crack cocaine, that he had been buying 2-ounce quantities of crack cocaine for resale, and that "he would make approximately $2,000.00 off of each ounce that he would sell in pieces."

After hearing and considering the evidence, the district court overruled the motion in an order dated November 4, 1994. In its order, the district court stated:

> [T]he Court has determined that the initial detention and pat-down for weapons of the Defendant were justified by the information within the knowledge of the police involved concerning Defendant's past drug involvement, gang ties, the information received from a previously reliable confidential informant that, within the preceding 24 hours, the Defendant told the C.I. that he would have large amounts of crack cocaine on his person for sale on that very day, January 6, 1994, and the fact that the Defendant turned and started to run after the officer had ascertained his identity while they were on the front porch

of 3706 Ernst Street.

. . . .

The pat-down for weapons was, under the circumstances in this case, proper under *Terry v. Ohio*, 392 U.S. 1 (1968). When the officer felt what he believed to be, based upon his training and experience, crack cocaine on Defendant's person during the pat-down, he had probable cause to arrest and, accordingly, a search incident to arrest at that time would have been proper. The fact that the police waited to search until they had obtained a warrant is of no consequence to the decision in this case. They were merely exercising an overabundance of caution.

After Hayes waived his right to jury trial, his case was tried to the court on stipulated facts. The challenged evidence was admitted over objection. The trial court found Hayes guilty of the charge and sentenced him to incarceration for a period of not less than 5 nor more than 8 years. Hayes appeals to this court the district court's order denying his motion to suppress and the admission of the challenged evidence.

## ASSIGNMENTS OF ERROR

Hayes generally asserts that the district court erred in overruling his motion to suppress and in admitting the challenged evidence because (1) the initial "stop and frisk" was unlawful, and therefore, the fruits of the search could not be used to establish probable cause for an arrest; (2) the State lacked probable cause to arrest; and (3) the affidavit for the search warrant contained deliberate falsehoods and was drafted with a reckless disregard for the truth.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Ranson*, 245 Neb. 71, 511 N.W.2d 97 (1994). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but,

rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *Ranson, supra.* See *Flores, supra.*

## ANALYSIS

Hayes argues on appeal that the trial court erred by denying his motion to suppress and by receiving evidence of the crack cocaine and his statement at the stipulated trial. Hayes claims that the police violated the 4th and 14th Amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution. Hayes' argument proceeds that the police improperly stopped him at 3706 Ernst Street in violation of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); that the search of his person during this stop exceeds that permitted by *Minnesota v. Dickerson*, ____ U.S. ____, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); that his arrest was unsupported by probable cause, see *State v. Evans*, 223 Neb. 383, 389 N.W.2d 777 (1986); and that the warrant to search his person was improperly obtained, see *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The State responds primarily that when police seized Hayes at 3706 Ernst Street, there was probable cause to arrest him at that time and that the search of his person which led to the discovery of the crack cocaine was proper as an incident to a lawful custodial, warrantless arrest. See *State v. Kimminau*, 240 Neb. 176, 481 N.W.2d 183 (1992). We agree with the State.

It is fundamental that the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution prohibit only unreasonable searches and seizures. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). The 4th and 14th Amendments and the Nebraska Constitution do not protect citizens from all governmental intrusions, but only from unreasonable intrusions. *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990).

In the instant case, it is clear from the record that Quaites did not merely pat down Hayes for weapons, but took a second pass at Hayes, palpating his clothes and thus locating the crack cocaine. Such an excursion, beyond a "plain feel," is

improper in the context of a *Terry* stop. *Dickerson, supra*; *State v. Jackson*, 276 N.J. Super. 626, 648 A.2d 738 (1994). However, in *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), the U.S. Supreme Court held that in the case of a lawful custodial arrest, a full search of a person is not only an exception to the Fourth Amendment's warrant requirement, but is also a reasonable search under that amendment. The Nebraska Supreme Court has also held that a search incident to a lawful arrest is a reasonable search under article I, § 7, of the Nebraska Constitution. See, *State v. Sassen*, 240 Neb. 773, 484 N.W.2d 469 (1992); *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990).

The validity of a warrantless arrest and the permissibility of a search incident thereto are premised upon the existence of probable cause, not on a police officer's knowledge that probable cause exists. *Roach, supra.* Where a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant. *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 113, 126 L. Ed. 2d 78. It has also been held that a search incident to an arrest can be made prior to an arrest as long as probable cause for the arrest exists prior to the search. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *Roach, supra.* It is fundamental that "a search before an arrest, and claimed to be an incident of the arrest, cannot serve as a basis for the validity of the arrest." *Twohig*, 238 Neb. at 107, 469 N.W.2d at 354. Thus, it has been observed that it does not matter that a defendant is not formally placed under arrest until after a search, so long as the fruits of the search are not necessary to support probable cause to arrest. *Roach, supra.*

A person is arrested or seized for Fourth Amendment purposes when there is a restraint on his or her freedom of movement in any significant way. See, *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993); *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990), *cert. denied* 498 U.S. 1127, 111 S. Ct. 1091, 112 L. Ed. 2d 1195 (1991); *State v. LaChappell*, 222 Neb.

112, 382 N.W.2d 343 (1986). See, also, *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995) (regarding custodial statements and arrest for *Miranda* purposes). The test derived from *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), namely, that police have seized an individual " ' "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,"· ' " is commonly cited as the description of an arrest. *Twohig*, 238 Neb. at 102, 469 N.W.2d at 351, quoting *Mendenhall, supra*. See, also, *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Under Nebraska jurisprudence, it appears that a suspect's submission to an officer's show of authority may also constitute a seizure. See, *Van Ackeren, supra*; *Twohig, supra*. See, also, *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991).

Pursuant to Neb. Rev. Stat. § 29-404.02 et seq. (Reissue 1989) and the case law, where a law enforcement officer has probable cause to believe he or she was witnessing the commission of a felony, an officer may arrest a person without a warrant. See *Roach, supra*. The crime of possession with intent to deliver 28 grams or more of crack cocaine is a Class IC felony. § 28-416(8)(a). In assessing probable cause, it has been observed that "[t]he fourth amendment to the U.S. Constitution makes no distinction in the standards applicable to a determination of probable cause for arrest and probable cause for search and seizure." *State v. Haynie*, 239 Neb. 478, 483, 476 N.W.2d 905, 910 (1991). Thus, the principles enunciated in connection with probable cause in cases involving search warrants generally apply to an assessment of probable cause in connection with a warrantless arrest.

In the instant case, the State asserts that there was probable cause to arrest Hayes prior to the time he was restrained by the officers at 3706 Ernst Street. Probable cause for a warrantless arrest exists by reference to the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). It has been held that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to

that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). See, also, *Roach, supra*.

As recited above, the trial court made the following factual findings in denying the motion to suppress:

Based upon consideration of the foregoing, the Court has determined that the initial detention and pat-down for weapons of the Defendant were justified by the information within the knowledge of the police involved concerning Defendant's past drug involvement, gang ties, the information received from a previously reliable confidential informant that, within the preceding 24 hours, the Defendant told the C.I. that he would have large amounts of crack cocaine on his person for sale on that very day, January 6, 1994, and the fact that the Defendant turned and started to run after the officer had ascertained his identity while they were on the front porch of 3706 Ernst Street.

We recognize the inconsistencies in the testimony of Quaites between the preliminary hearing and the hearing on the motion to suppress, as noted by Hayes on appeal. Apparently, the trial judge found the testimony of Quaites and Neaman at the hearing on the motion to suppress credible, and we cannot say that assessment or the court's findings are clearly erroneous. See *State v. Ranson*, 245 Neb. 71, 511 N.W.2d 97 (1994). The trial court's findings support the legal conclusion that there was probable cause to arrest Hayes when he was seized at 3706 Ernst Street prior to the search.

Although the moment when Hayes was handcuffed is controverted, it is clear that the officers exercised authority over Hayes and that he submitted to such authority prior to the handcuffing. It is uncontroverted that Hayes was handcuffed and held at 3706 Ernst Street for a half hour and thereafter at the police station for an additional period. His request to leave 3706 Ernst Street was denied. Based on the foregoing, Hayes was arrested when the police restrained him at 3706 Ernst Street prior to the initial search.

■ On appeal, we review the record as a whole, *State v. Huffman*, 181 Neb. 356, 148 N.W.2d 321 (1967), *cert. denied* 386 U.S. 1024, 87 S. Ct. 1384, 18 L. Ed. 2d 466, and we

conclude that the facts support a finding of probable cause to arrest Hayes at 3706 Ernst Street prior to Quaites' locating the bulge in Hayes' clothing which later proved to be contraband. The record shows that within the 24 hours prior to Hayes' arrest, an informant, with a proven reliable track record, advised police that Hayes would be in possession of crack cocaine for sale on January 6, 1994. See *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992). Prior to Hayes' arrest, the officers independently verified Hayes' history of a drug conviction in 1989. See *id*. Neaman testified that he was aware of this information and imparted it to Quaites prior to Hayes' arrival at 3706 Ernst Street. Hayes appeared at 3706 Ernst Street during the officers' search for drugs at that location and started to flee when an officer identified himself. See, generally, *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981) (regarding a detention of persons on the premises where a search warrant is being executed). Although flight from officers is insufficient alone to establish probable cause, in the context of assessing the totality of the circumstances, flight is a relevant factor. See *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), *cert. denied* ____ U.S. ____, 113 S. Ct. 1625, 123 L. Ed. 2d 183 (1993).

Based on the foregoing, we conclude that there was probable cause to arrest Hayes at the time he was seized at 3706 Ernst Street prior to the initial search, that the arrest was proper, and that the subsequent recovery of the crack cocaine and statements were proper. Thus, the trial court did not err in its denial of the motion to suppress and the subsequent admission of the challenged evidence at trial.

AFFIRMED.