STATE OF NEBRASKA, APPELLEE, V. CHARNETTE V. WILLIAMS, APPELLANT.

544 N.W.2d 350

Filed March 8, 1996. No. S-95-287.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Charnette V. Williams was charged with two counts of possession of a controlled substance. Prior to trial, Williams filed a motion to suppress the evidence seized during a search of her person. The trial court overruled the motion to suppress, and thereafter, a stipulated bench trial was held. Williams was found guilty on both counts and sentenced to concurrent terms

of not less than 1 nor more than 2 years' imprisonment. Williams timely perfected this appeal.

## SCOPE OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

## FACTS

At 4:45 p.m. on March 28, 1994, a boy walked into a satellite office of the Omaha Police Division and anxiously told Officer Michael McGee and other officers that "they're beating my mother up and they have knives." The boy asked the police to go with him and repeatedly told them to hurry because "they" were hurting his mother. The officers followed the boy approximately one-half block to 2404 North 30th Street. At that time, the police did not know who had the knives and did not have a description of the knives.

When the police arrived on the scene, people were standing on the front porch of the residence. The police entered an apartment and found several adults, teenagers, and children inside. Some of these people, including Williams, were involved in an argument. The police had not located any weapons up to this point.

At the suppression hearing, McGee testified that Williams told him that she and an adult male were arguing about an incident which had occurred the night before. During that incident, the man had allegedly thrown a beer bottle, which struck Williams' baby. McGee testified that Williams caught his attention because "[s]he was making a gesture with her right hand, placing it under her T-shirt, around her waistband, in a manner that is very common to hold on to a weapon or something . . . ." Williams was dressed in a pair of loose-fitting pants and a large, baggy T-shirt that was pulled out so it covered her waistband. McGee said that this behavior caused him concern and that he feared for his safety.

Williams was instructed to place her hands against a kitchen cabinet so a female officer could conduct a pat-down search for weapons. The pat down disclosed no weapons, but during the

course of the pat down, the officers observed that the fingers of Williams' right hand were fully extended, but her left hand was clenched in a fist. McGee testified that the boy's statement about knives, coupled with Williams' clenched fist, caused him to fear for his safety because he believed that Williams might be concealing a razor blade or other dangerous instrument in her hand. Williams was asked to open her hand several times, but she refused. The officers forced open Williams' hand and found two pills, which were determined to be Ritalin and Talwin, both controlled substances.

Officer Daniel Clark, who was also present for the search, testified at the hearing. Clark stated that he was concerned that Williams might have a weapon concealed in her hand and was concerned for his safety and the well–being of the other officers. Clark testified that he suspected Williams had a small knife or razor blade in her hand, but he also testified that the thought crossed his mind that Williams might be holding drugs. Clark stated that this idea was not discussed among the officers.

At the suppression hearing, the trial court found that the opening of Williams' fist was a permissible weapons search, and the court overruled her motion to suppress. Following a bench trial based upon stipulated facts and police reports, Williams was found guilty of two counts of possession of a controlled substance. She was sentenced to concurrent terms of 1 to 2 years' imprisonment on each count.

## ASSIGNMENT OF ERROR

Williams asserts that the trial court erred in overruling her motion to suppress, claiming that the search of her person was beyond the scope and parameter of a lawful weapons search conducted for officer safety.

## ANALYSIS

We consider whether the forcible opening of Williams' clenched fist was within the scope of permitted searches under the so–called "stop and frisk" rule articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In *Terry*, the Court noted that the U.S. Constitution forbids only unreasonable searches. Under the Fourth Amendment, the central issue is the reasonableness of the search. Thus, the *Terry*

Court balanced the governmental interest in the safety of law enforcement officers against the intrusion on individual rights that occurs during a search for weapons in a situation where probable cause to make an arrest is lacking.

> [T]here is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. . . .
>
> . . . [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry*, 392 U.S. at 23–24. Balancing the officer's interest in self–protection against the individual's right to be free from an unreasonable search, the Court set forth a principle with regard to the scope of a weapons search which incorporated the concept of reasonableness.

> Thus [a search for weapons] must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.
>
> . . . .
>
> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual . . . .

. . . .

. . . The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of. the police officer.

*Terry*, 392 U.S. at 26–29.

This court has adopted the *Terry* rule. See, *State v. Kimminau*, 240 Neb. 176, 481 N.W.2d 183 (1992); *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990). In *Kimminau*, we clarified that the search must be " 'carefully limited' " to a search for weapons and that a search for both weapons and controlled substances is beyond the scope of a permissible *Terry* search. 240 Neb. at 181, 481 N.W.2d at 187. See, also, *State v. Evans*, 223 Neb. 383, 389 N.W.2d 777 (1986).

Our determination of whether the search of Williams' hand fits within the balance that the *Terry* rule established must be made upon the facts of this case. Williams was observed making a furtive gesture with her hand near the waistband of her pants. McGee testified that the gesture made him concerned about the officers' personal safety. While being patted down by a female officer, Williams clenched her left fist. McGee testified that this underscored his concern that Williams might be concealing a weapon in her hand. Clark testified that the officers present during the pat down noticed Williams' clenched fist and expressed their concern that she was concealing something in her hand. McGee had been informed that people in the apartment were brandishing knives. At the time of the pat down, the police had not identified which of the people in the apartment, if any, actually had a knife.

If, under *Terry*, a police officer is justified in conducting a protective weapons search based upon the officer's reasonable belief that a suspect may be armed and dangerous, such a weapons search would necessarily include the right to search a clenched fist. Common sense would not dictate otherwise. Weapons are normally held in one's hands. Hence, a search for weapons in a suspect's hands is reasonable under such circumstances. Otherwise, a suspect could avoid the detection of

a weapon by simply hiding it in his hand, where it remains ready for use.

In reviewing a trial court's ruling on the suppression of evidence, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but will uphold the trial court's findings of fact unless those findings are clearly erroneous. See, *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993). In this case, the police officers were investigating a situation where they had been told that an assault was taking place and knives were present. Prior to the search of Williams, no weapons had been located. The officers were concerned that Williams might be concealing a weapon in her fist. Therefore, the discovery of the contraband was the product of a permissible protective weapons search.

Williams argues that *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), and *Weedon v. State*, 82 Md. App. 692, 573 A.2d 92 (1990), suggest that the search of her hand was not permitted under *Terry*. In *Dickerson*, an officer stopped an individual he suspected was trafficking drugs. During a pat-down search, the officer felt a lump in the individual's pocket. Suspecting the presence of a controlled substance, the officer manipulated the object with his fingers. The Court stated:

> Although the officer was lawfully in a position to feel the lump in the respondent's pocket, because *Terry* entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

*Dickerson*, 508 U.S. at 379.

In *Weedon*, the defendant was stopped and frisked by a police officer. During the frisk, the officer felt in Weedon's groin area a boxlike object about 3 inches long and 2 inches wide. The

officer extracted the object by reaching into Weedon's pants. The object was a clear plastic box containing crack cocaine. The court held that the search was invalid, since the officer had no reason to believe that the small box–shaped object he felt was a weapon that posed a threat to him.

We find that *Dickerson* and *Weedon* are readily distinguishable from the facts in the case at bar. In *Dickerson* and *Weedon*, the controlled substances were concealed within the clothing of the defendants. In each case, it was not reasonable for the officer to believe that the object was a weapon. Nevertheless, the officer went forward with a search beyond the scope of a *Terry* frisk for officer safety. In the case at bar, the officers were not able to make any determination as to what Williams was concealing in her hand. It was not possible for the officers to discern whether the object was a weapon or a controlled substance. The search of Williams' hand was done to ensure that Williams did not have a weapon. Once Williams' hand was opened, the incriminating character of the controlled substances was apparent without a further search.

We find *People v. Shackelford*, 37 Colo. App. 317, 546 P.2d 964 (1976), to be persuasive authority with regard to the facts of this case. In *Shackelford*, the defendant was stopped because he matched the description of a robbery suspect. During a pat down, the defendant turned his left hand away to hide what he was holding. The officers, fearing that the defendant might be palming a weapon, scuffled with the defendant until several items fell out of his hand. One of the items was the victim's credit card. The court held that since the search was prompted by the defendant's suspicious and unusual movements, and was directed at the discovery of possible weapons, the items uncovered by the search were the product of a permissible protective frisk and were properly admitted.

## CONCLUSION

From our review of the record, we cannot say that the trial court's overruling of Williams' motion to suppress was clearly erroneous. The judgments of conviction and sentences are affirmed.

AFFIRMED.