STATE OF NEBRASKA, APPELLEE,
V. LARRY D. BROOKS, APPELLANT.
560 N.W.2d 180

Filed February 18, 1997.   No. A-96-417.

Thomas M. Kenney, Douglas County Public Defender, and Gary D. Olson for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

MILLER-LERMAN, Chief Judge.

Larry D. Brooks appeals from his conviction for possession of a controlled substance, crack cocaine, a violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1994). For the reasons recited below, we affirm.

## FACTS

On August 15, 1995, at about 12:05 a.m., Omaha police officers James Paul and Steve Orsi were patrolling in a marked cruiser in the area of 30th and Pratt Streets in Omaha. Officer Paul testified that while patrolling, he noticed a person, later identified as Brooks, urinating while facing the interior wall of a carwash. On cross-examination, Officer Paul stated that he could see Brooks' penis during this incident.

The carwash was described as consisting of four bays with brick walls separating each bay and openings at each end. No cars were parked within the bays. A blue Cadillac that Brooks and his female companion were using that night was parked nearby. No other people were reported in the immediate area. At the suppression hearing, Brooks denied urinating at the carwash that night. He testified that he was there washing his car.

Officer Paul testified that upon seeing the activity at the car wash he concluded that Brooks should be arrested for littering. The officers stopped their cruiser and approached Brooks. Brooks was directed to come toward the officers. Contrary to the police officers' direction, Brooks walked backward, apparently toward the blue Cadillac parked in the nearby lot. According to Officer Paul, he approached Brooks, placed his hand on Brooks' arm, and escorted Brooks to the cruiser to administer a pat-down search and to arrest Brooks for littering. The officer asked Brooks to place his hands on the hood of the cruiser. Brooks did not comply. Instead, Brooks reached toward his pants pockets. The record shows that Brooks started to put his hands on the cruiser but then reached toward his pants pockets several times, thereby preventing the pat-down search until the officers handcuffed Brooks' hands behind his back.

After Brooks was handcuffed, Officer Paul patted Brooks down and in the course of the search found a "small bulge" in Brooks' right front pants pocket and removed the item. Officer

Paul stated that he had not noticed anything protruding from Brooks' pockets prior to this search. The item found in Brooks' pocket was a plastic bag containing a piece of brown paper wrapped around several rocks of crack cocaine.

Brooks was taken to police headquarters. According to the "Omaha Police Department Uniform Crime Report," Brooks was charged with three offenses: littering; possession of a controlled substance, crack, with intent to deliver; and obstructing a police officer. The record on appeal does not disclose the subsequent history pertaining to the littering and obstructing a police officer offenses. An information was filed charging Brooks with possession of a controlled substance. It is the conviction of the possession charge which Brooks appeals.

Brooks filed a motion to suppress the evidence or information learned as a result of the stop and search, alleging that the search of his person was not incident to a lawful arrest, was done without valid consent, and was conducted without a valid warrant. A hearing was conducted on December 1, 1995, on the motion to suppress, and the facts recited above were testified to. The live witnesses were Officer Paul and Brooks.

In a written order dated December 14, 1995, the trial court overruled Brooks' motion to suppress and made the following findings and order:

> 1. Officer James Paul observed the defendant urinating in public on August 15, 1995, in Omaha, Douglas County Nebraska. This is in violation of Section 20-114 of the Omaha Municipal Code. Paul therefore had sufficient probable cause to arrest the defendant. It is irrelevant that the defendant was arrested for littering rather than indecent exposure.
>
> 2. The search of the defendant was incident to a lawful arrest. In addition the defendant was not cooperative and was acting suspiciously.
>
> 3. The defendant's motion to suppress is therefore overruled.

On January 11, 1996, a stipulated trial based primarily on the evidence at the suppression hearing was had to the bench. Brooks offered and the court admitted exhibit 2, which was a copy of Omaha Mun. Code, ch. 20, art. V, § 20-114 (1967), per-

taining to indecent exposure. Brooks unsuccessfully objected to the admission of the evidence of the crack cocaine found in the search, and his motion to suppress was renewed and overruled. The trial court found Brooks guilty beyond a reasonable doubt of possession of a controlled substance. Following sentencing, Brooks timely appealed.

## ASSIGNMENT OF ERROR

Brooks assigns the following error: "Probable cause to arrest the Defendant [Brooks] did not exist and accordingly the search incident to arrest was illegal."

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress has traditionally been upheld on appeal unless its findings of fact are clearly erroneous. *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996). However, a new standard of review has emerged in cases such as this involving the legality of investigative stops and subsequent warrantless searches. We quote from the Nebraska Supreme Court's recent decision in *State v. Konfrst*, 251 Neb. 214, 222-23, 556 N.W.2d 250, 258 (1996):

In light of the U.S. Supreme Court's decision in *Ornelas v. U.S.*, ___ U.S. ___, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), the traditional clearly erroneous standard of review of a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search is no longer applicable. The clearly erroneous standard has now been supplanted by a two-stage standard in which the ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id.*

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. See, *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Bowers*,

250 Neb. 151, 548 N.W.2d 725 (1996). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

See *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996) (holding appellate courts should review findings of "historical fact" only for clear error, giving due weight to inferences drawn from those facts by "resident judges" and "local law enforcement" officers, while as general matter, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal).

## ANALYSIS

On appeal, the State argues that the trial court did not err when it found that Brooks was urinating in public, that this conduct violated the Omaha city ordinance against indecent exposure, § 20-114, and that the search was proper as an incident to an arrest. Section 20-114 provides as follows: "It shall be unlawful for any person purposely or knowingly to expose his genitals under circumstances likely to cause affront or alarm." For the sake of completeness, we note that Neb. Rev. Stat. § 28-806 (Reissue 1995), pertaining to public indecency, is a crime of specific intent, i.e., "exposure of the genitals . . . with intent to affront or alarm," and has no application to this case. The State claims that the facts support the arrest for indecent exposure, that the arrest was based on probable cause, and that the arrest preceded the search which revealed the drugs. The State claims, in the alternative, that the initial stop of Brooks was based on reasonable suspicion and that an offense was being committed under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The State argues that the "course of events gave rise to probable cause to arrest the defendant [Brooks]. Subsequent to his lawful arrest, he was legal search [sic] and drugs were found on his person. Because the defendant was lawfully arrested, the search [was] subsequent to his arrest." Brief for appellee at 11. The State does not specify what Brooks was arrested for under this alternative theory; however, it does claim that Brooks "tried to flee the officers." *Id.* We infer

that viewed in the totality of circumstances, it is this conduct of retreating combined with Brooks' resistance to the proper pat down for weapons on which the State bases its alternative argument that probable cause to arrest for obstructing a police officer existed before the search of Brooks' pants pockets.

On appeal, Brooks argues that the search of his person was impermissible because there was no probable cause to arrest him prior to the search. Brooks focuses on the language of the indecent exposure ordinance and claims that under the totality of the circumstances, even if he had been urinating in public, it was not "under circumstances likely to cause affront or alarm" as required by § 20-114. Brooks points to the uncontradicted testimony that the incident occurred in the early morning, that there was no pedestrian traffic noted, and that Brooks was attempting to conceal his act of urination. According to Brooks, this portrait of events was not likely to cause affront or alarm. Therefore, Brooks argues that there was no probable cause to believe Brooks had engaged in indecent exposure prior to the pat down and that the pat down, which revealed the drugs, exceeded a proper *Terry* search for weapons and was not incident to a lawful arrest. Brooks claims that the trial court erred in overruling his motion to suppress and in admitting the evidence of the crack cocaine at trial. We do not agree.

It is fundamental that the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution prohibit only unreasonable searches and seizures. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Hayes*, 3 Neb. App. 919, 535 N.W.2d 715 (1995). The 4th and 14th Amendments and the Nebraska Constitution do not protect citizens from all governmental intrusions, only from unreasonable intrusions. *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990); *Hayes, supra.* For a thorough discussion of the propriety of a search in the context of the particular stop, see *State v. Chitty, ante* p. 412, 559 N.W.2d 511 (1997).

In the instant case, it is clear from the record that Officer Paul did not merely pat down Brooks for weapons but, instead, reached into Brooks' pocket and discovered the crack cocaine. Such an excursion, beyond a "plain feel," is improper in the context of a *Terry* stop. *Minnesota v. Dickerson*, 508 U.S. 366,

113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); *State v. Williams*, 249 Neb. 582, 544 N.W.2d 350 (1996); *Hayes, supra.* Since the search of Brooks' pocket exceeded that permitted under a *Terry* stop, for the search to be permissible, it must have been made as an incident to a lawful arrest.

■ In *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), the U.S. Supreme Court held that in the case of a lawful custodial arrest, a full search of a person is not only an exception to the Fourth Amendment's warrant requirement, but is also a reasonable search under that amendment. The Nebraska Supreme Court has also held that a search incident to a lawful arrest is a reasonable search under article 1, § 7, of the Nebraska Constitution. See, *State v. Sassen*, 240 Neb. 773, 484 N.W.2d 469 (1992); *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990).

■ The validity of a warrantless arrest and the permissibility of a search incident thereto are premised upon the existence of probable cause, not on a police officer's knowledge that probable cause exists. *State v. Ranson*, 245 Neb. 71, 511 N.W.2d 97 (1994); *Roach, supra.* It has also been held that a search incident to an arrest can be made prior to an arrest as long as probable cause for the arrest exists prior to the search. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991); *Roach, supra.* It is fundamental that "a search before an arrest, and claimed to be an incident of the arrest, cannot serve as a basis for the validity of the arrest." *Twohig*, 238 Neb. at 107, 469 N.W.2d at 354. Thus, it does not matter that a defendant is not formally placed under arrest until after a search as long as the fruits of the search are not necessary to support probable cause for the arrest. *Roach, supra.*

■ The Nebraska Supreme Court has indicated that in evaluating whether probable cause existed prior to an arrest and search incident thereto, an appellate court need not decide whether probable cause to arrest for a particular crime existed, but, rather, whether probable cause existed to arrest for "some crime." *Ranson*, 245 Neb. at 75, 511 N.W.2d at 100. The application of this principle in the instant case is set forth more fully below.

▮ A person is arrested or seized for Fourth Amendment purposes when there is a restraint on his or her freedom of movement in any significant way. See, *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993); *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990), *cert. denied* 498 U.S. 1127, 111 S. Ct. 1091, 112 L. Ed. 2d 1195 (1991); *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986). See, also, *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995) (regarding custodial statements and arrests for *Miranda* purposes). The test derived from *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), namely, that police have seized an individual " ' "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," ' " is commonly cited as the description of an arrest. *Twohig*, 238 Neb. at 102, 469 N.W.2d at 351, quoting *Mendenhall, supra*. See, also, *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Under Nebraska jurisprudence, it appears that a suspect's submission to an officer's show of authority also constitutes a seizure. See, *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993); *Twohig, supra*; *Chitty, supra*. See, also, *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991).

In the instant case, Officer Paul testified that he arrested Brooks for littering. However, after hearing the evidence, the district court found that probable cause existed to arrest Brooks under the Omaha city ordinance prohibiting indecent exposure. As we read *Ranson, supra*, a variation between the officer's stated reasons for probable cause and the crime for which the trial court finds probable cause existed is of no consequence as long as the factual record supports the conclusion of probable cause for "some crime." Thus, under *Ranson*, and the cases generally, where there is probable cause to arrest for some crime, the arrest is good.

Our appellate review of this case for probable cause to arrest is limited to the record presented. The record before us contains the testimonial evidence of Officer Paul and Brooks. The written evidence includes the uniform crime report showing that Brooks was charged with littering, possession of a controlled substance, and obstructing a police officer. The Omaha city

ordinance pertaining to indecent exposure, § 20-114, is also in the record. There may be Omaha city ordinances pertaining to littering or other relevant offenses; but these ordinances are not in the record, and under Nebraska jurisprudence, we cannot judicially notice the ordinances. See *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992).

■ Neb. Rev. Stat. § 29-404.02(2) (Reissue 1995) authorizes a police officer to make a warrantless arrest when there is probable cause to believe that a misdemeanor is being committed in the presence of the officer. For the sake of completeness, we also note that Neb. Rev. Stat. § 29-422 (Reissue 1995) permits issuance of a citation in lieu of arrest.

Neb. Rev. Stat. § 28-523 (Reissue 1995) in relevant part makes it a misdemeanor to litter on public or private property. Neb. Rev. Stat. § 28-906 (Reissue 1989) makes it a misdemeanor to obstruct a police officer. Section 28-906 specifically provides:

(1) A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he intentionally obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his official authority.

(2) Obstructing a peace officer is a Class I misdemeanor.

A review of the cases shows that the act of urinating in public can be a violation of a city ordinance prohibiting disorderly conduct. See, e.g., *State v. Cherry*, 185 Neb. 103, 173 N.W.2d 887 (1970) (finding that complaint charging defendant with unlawfully engaging in disorderly conduct by urinating in public described offense with sufficient particularity). The Scottsbluff disorderly conduct ordinance in *Cherry* provided as follows:

" 'It shall be unlawful for any person or persons within the city to indulge or engage in any riotous, tumultuous or disorderly conduct; to take part in any disorderly assembly; to be an inmate of a disorderly house or attend or visit any such house; to fight by agreement or otherwise; to quarrel; to engage in lewd, indecent or lascivious behavior; or to

do or engage in any other disorderly act or conduct tending to disturb the peace and quiet of the city.' "
185 Neb. at 104, 173 N.W.2d at 888. However, the Omaha city ordinance pertaining to disorderly conduct is not in the record and has no application to this case.

A review of the literature shows that public urination can be a misdemeanor in some states where the public indecency statute merely requires a public showing of genitals without reference to the "alarming" circumstances of such a showing. E.g., *Elliott v. State*, 435 N.E.2d 302 (Ind. App. 1982) (concluding that exposure of penis while urinating in public alley violated misdemeanor statute of public indecency). We are aware that where the indecent exposure law such as the Omaha city ordinance requires that the exposure of genitals be under circumstances that are likely to affront or alarm, the failure of the record to objectively show the likelihood of affront or alarm is fatal. E.g., *State v. Garland*, 482 A.2d 139 (Me. 1984) (concluding, inter alia, that defendant's act of urinating in middle of country road at 6:40 p.m. when accompanied by young female companion but where no other cars or people were in area did not give rise to reasonable suspicion of criminality under indecent exposure statute and, therefore, *Terry* stop was improper).

For the sake of completeness, we also note that under a Lincoln municipal ordinance similar to that in Omaha, the evidence was found sufficient to sustain a conviction for indecent exposure where the defendant stood at a urinal in the restroom of a well-trafficked shopping mall, approached an occupied stall and masturbated, and then returned to the urinal with his penis exposed. *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991).

In the instant case, Officer Paul's testimony indicates that while he and Officer Orsi were patrolling in an urban area around midnight, he saw Brooks facing sideways in a bay of the carwash, and that the officer could see Brooks' penis. Depending on the facts, urinating in public can be prohibited indecent exposure. Indeed, after hearing the witnesses and the evidence, the trial court concluded that Brooks had violated the Omaha city ordinance prohibiting indecent exposure. The record shows that the officers cited Brooks for littering. We con-

clude that the totality of the facts of this case gave rise to a reasonable articulable suspicion that some offense, i.e., indecent exposure under the Omaha city ordinance, was being committed sufficient for a *Terry* stop without regard to whether or not there then existed probable cause to arrest, an issue we need not decide. See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993). Investigative stops are statutorily authorized in Nebraska under Neb. Rev. Stat. § 29-829 (Reissue 1995).

■ Following a *Terry* stop, an officer cannot continue to press his or her investigation if the officer's original interpretation of the suspect's actions is mistaken. See 4 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 9.3 (3d ed. 1996). Contrariwise, where the continuing flow of information coming to the officer's attention after the original stop is such that additional wrongdoing occurs or is suggested, the officer may expand the inquiry. See 2 LaFave, *supra*, § 3.6. In the instant case, the legitimate *Terry* stop pertaining to urinating at the carwash evolved into probable cause to arrest for obstructing an officer.

The record shows that after Officers Paul and Orsi pulled into the carwash area and exited their cruiser, they properly directed Brooks to walk toward them. Brooks, however, walked backward toward a nearby lot. Upon reaching Brooks, Officer Paul placed his arm on Brooks' arm and escorted Brooks to the cruiser for purposes of a pat-down search. Brooks did not comply with Officer Paul's order to put his hands on the cruiser hood but, instead, reached toward his pants pockets. Brooks did this several times, thereby preventing the pat-down search. After these events, Brooks was handcuffed and then searched. This search revealed the crack cocaine in Brooks' pants pocket.

The foregoing facts establish that the officers were justified in their initial *Terry* stop after observing Brooks urinating in public. Brooks was directed to approach the officers but, instead, retreated. Under these facts, the officers are permitted under the cases and statutes to pat down Brooks in connection with a *Terry* stop, where the pat down is limited to a search for weapons. See, *State v. Williams*, 249 Neb. 582, 544 N.W.2d 350 (1996); *State v. Kimminau*, 240 Neb. 176, 481 N.W.2d 183 (1992); *State v. Chitty, ante* p. 412, 559 N.W.2d 511 (1997);

§ 29-829. The officers attempted to pat down Brooks in this fashion, but after he had first backed off and then had to be escorted to the cruiser, he repeatedly refused to place his hands on the cruiser, thereby preventing the limited pat down for weapons, which the officers were properly attempting to perform. This conduct by Brooks impaired and hindered the officers in the performance of their enforcement duties and amounted to an obstruction of a peace officer, in violation of § 28-906. Cases elsewhere have found similar facts to be an obstruction of a police officer. E.g., *State v. Paarmann*, 199 Wis. 2d 523, 546 N.W.2d 579 (Wis. App. 1996) (unpublished opinion) (noting that defendant walking away in contravention of officer's order for pat down was fact in totality of "obstructing"); *Burse v. State*, 209 Ga. App. 276, 433 S.E.2d 386 (1993) (noting that defendant was properly arrested for obstruction after he was instructed to put his hands on car, and then when officer felt bulge in defendant's pants, defendant took his hand off car and placed it over bulge and refused to remove it when asked).

Obstructing a police officer is a Class I misdemeanor. Because the officers witnessed the misdemeanor of obstructing a peace officer, they were permitted to arrest Brooks, which they did when they handcuffed him. Thereafter, the officers properly searched Brooks' person as an incident to the arrest. See *Kimminau, supra.*

Under the facts of this case, Brooks was properly arrested for obstructing a police officer, and the search incident to that arrest produced the crack cocaine. Since the search was incident to a lawful arrest, the search was proper. At the trial for possession of a controlled substance, the trial court did not err in overruling Brooks' motion to suppress or in admitting the crack cocaine as evidence over objection. Accordingly, the orders of the district court are affirmed.

AFFIRMED.

IRWIN, Judge, concurring.

I respectfully concur because I agree that the decision of the trial court should be affirmed. I write separately because the majority opinion never decides whether the trial court was correct or not when it found the search was valid because it was

conducted incident to a lawful arrest. Rather, the majority ends its analysis when it finds that a reasonable articulable suspicion existed and continues on to create a new doctrine regarding the offense of obstruction of a peace officer and a pat-down search.

The majority correctly frames the issue raised by Brooks when it states that "Brooks claims that the trial court erred in overruling his motion to suppress and in admitting the evidence of the crack cocaine at trial."

The majority also accurately comments regarding our standard of review when it says that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

The historical facts of this case are that at midnight, Brooks was urinating in a stall of a carwash which was open at each end and one of those open ends faced the street, near the intersection of 30th and Pratt Streets in Omaha. From the street, Officers Paul and Orsi saw Brooks urinating and could see his penis.

In ruling on the motion to suppress, the trial judge found in his written findings and order that these facts were a *violation* of Omaha's indecent exposure ordinance. He stated further that this *violation* gave the officers *probable cause* to arrest Brooks. He further found that the search was therefore incident to a lawful arrest.

The Omaha city ordinance regarding indecent exposure reads: "It shall be unlawful for any person purposely or knowingly to expose his genitals under circumstances likely to cause affront or alarm." This ordinance defines a general intent crime. See, generally, *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987). Under this ordinance, it is inconsequential whether Brooks possessed specific intent to affront or alarm. I am unable to find that the trial judge was in error in concluding that an actual *violation* of the indecent exposure ordinance had occurred and that, therefore, the officers had authority to search Brooks as incident to a lawful arrest. The majority, however, in its review, does not reach the question of whether probable cause existed.

The majority concludes that

the totality of the facts of this case gave rise to a reasonable articulable suspicion that some offense, i.e., indecent exposure under the Omaha city ordinance, was being committed sufficient for a *Terry* stop *without regard to whether or not there then existed probable cause to arrest, an issue we need not decide.* See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

(Emphasis supplied.)

I agree with that part of the above quote which finds there was a reasonable articulable suspicion. I say this because I agree with the trial court that there was probable cause, and, therefore, it is axiomatic that a reasonable articulable suspicion existed. However, I do not agree that *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), dictates or stands for the proposition of law that in a case such as that before us, because a reasonable articulable suspicion exists, we need not decide whether the trial court was in error in concluding that probable cause existed. In fact, in *Van Ackeren,* the state conceded that probable cause did not exist at the time of the defendant's confrontation with the police but contended that the confrontation was an investigatory stop.

The majority has concluded that the proper path of analysis is to begin with a determination regarding the existence of a reasonable articulable suspicion and finding such to exist, not to continue on in an analysis with regard to the trial court's ruling that probable cause existed. This results in the unnecessary creation of a doctrine regarding the offense of obstruction of a police officer and pat-down searches. I express no view regarding this doctrine at this time.

Probable cause for a warrantless arrest exists where the facts and circumstances within an officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant one of reasonable caution to believe that there was a fair probability that an offense has been or is being committed. See, *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990). At the time of arrest, the police need not be certain that the person could actually be convicted of the crime.

Based upon the record before us, the officers would have been reasonable in concluding that there was a fair probability Brooks was committing the crime of indecent exposure under the city ordinance.

In summary, I would conclude that the trial court did not err when it concluded that the police had probable cause to arrest Brooks for public indecency, that the subsequent search was proper as a search incident to arrest, and that drugs found pursuant to the search were admissible at trial. I would affirm Brooks' conviction and sentence on this basis.