STATE OF NEBRASKA, APPELLEE,
v. MICHAEL R. GUTIERREZ, APPELLANT.
611 N.W. 2d 853

Filed May 30, 2000.    No. A-99-1022.

William L. Binkard for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and MOORE, Judge.

IRWIN, Chief Judge.

## I. INTRODUCTION

Michael R. Gutierrez appeals his convictions for possession of a controlled substance, possession of a firearm by a felon, and two counts of carrying a concealed weapon. On appeal, he contends that his motion to suppress should have been granted and that evidence seized as a result of the allegedly unconstitutional search and seizure of his person and the vehicle in which he was a passenger should not have been admitted at his jury trial. For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

At about noon on April 3, 1998, Officer Chad Sheehan of the South Sioux City Police Department observed a gray Chevrolet Celebrity in the parking lot of an apartment complex located on East 18th Street in South Sioux City. Police information indicated that this apartment complex was the site of some drug activity. Sheehan saw the Celebrity, which was driven by a female, pull up next to a white Chevrolet S-10 Blazer. Sheehan drove his vehicle around the block. After he again drove by the entrance to the apartment complex, the Celebrity pulled out of the complex and followed him. In Sheehan's rearview mirror, Sheehan saw the vehicle stop at a stop sign and then make a right turn; the vehicle's driver failed to use the right-turn signal. Based on his observation of a traffic infraction, Sheehan initiated a stop of the vehicle. It took the vehicle's driver approximately two blocks to stop the vehicle. We note that at some point, which is not clear from the record, Sheehan issued the driver a written warning for failure to signal.

While the vehicle was pulling over, Sheehan noticed the passenger "making some type of movement that appeared that he was trying to conceal something underneath the seat in which he was seated on." While Sheehan walked toward the vehicle, he

could see the male passenger "bent over and appeared to be placing something under . . . his left leg." Based on Sheehan's training and experience, this movement caused Sheehan concern because the passenger could be "attempting to conceal a weapon or some other type of contraband."

While Sheehan obtained the driver's identification, the driver seemed a bit nervous and her hands were "jittery." When Sheehan approached the vehicle, the passenger, whom Sheehan later identified to be Gutierrez, was wearing dark sunglasses and was sitting with his hands on his knees. Gutierrez' hands and knees were shaking, and he did not make eye contact. When Sheehan asked Gutierrez for identification, Gutierrez indicated that he did not have any. Sheehan then asked Gutierrez to exit the vehicle. Sheehan had Gutierrez stand to the back of the vehicle and place his hands on the vehicle. Sheehan asked Gutierrez to identify himself. Gutierrez stated that he was "Michael Lopez."

Next, Sheehan "quickly patted [Gutierrez'] waist just to ensure that he didn't have anything in the front of his waist band or in the back of his waist band." According to Sheehan, he conducted a pat-down search because he felt that the passenger "had probably concealed something under the seat, and for my safety in dealing with him, since I was the only officer at the scene initially, I wanted to make sure that that wasn't going to be the last traffic stop that I made." Sheehan asked Gutierrez his date of birth, age, where he was coming from, and where he was going. Gutierrez first indicated that he was born on April 3, 1971, and that he was 37. He then indicated that he was born April 3, 1961. Gutierrez stated that he was coming from a motel, that he was going home, and that he lived with the driver, who was his girl friend.

Next, Sheehan returned to the vehicle to speak with the driver. Sheehan asked the driver what the passenger's name was. She replied that it was "Michael Gutierrez." Sheehan also asked her where they were coming from and where they were going. The driver responded that they had come from a friend's home at Interstate Apartments and that she was taking Gutierrez to the airport so he could fly back to California. While Sheehan was speaking to the driver, another police officer arrived.

When the second police officer arrived, Sheehan conducted a "more thorough pat search" of Gutierrez' person. He did a more thorough pat search at this time because he felt "safer with the backup officer there." The pat down consisted of searching over Gutierrez' clothing. Sheehan patted Gutierrez' arms, underneath his arms, and his waistband. When patting the waistband, Sheehan discovered a pouch on the belt. Sheehan "squeezed" the pouch and felt "sharp objects" inside the pouch. "By feeling them, [Sheehan] thought that perhaps they were throwing stars . . . ." Sheehan described a throwing star as a weapon used in martial arts that is in the shape of a star which is sharp on all points and is generally used by throwing it at an object or person. Sheehan then opened the pouch and found three four-pointed throwing stars. As a result, Sheehan placed Gutierrez under arrest for possession of a concealed weapon.

Following the arrest, Sheehan searched Gutierrez' person and the vehicle. On Gutierrez' person, Sheehan found a white baggie containing a rock of methamphetamine, a black digital scale, a package of "zigzag rolling papers," shotgun shells, and $4,180 in cash. Gutierrez also indicated that he had some marijuana and another $462 in cash. Under the passenger seat of the vehicle, Sheehan found a .45-caliber semiautomatic handgun inside of which was a fully loaded magazine. In the trunk of the vehicle inside a suitcase containing male clothing, Sheehan found a beeper contract in Gutierrez' name and a box of .45-caliber semiautomatic ammunition. In the suitcase, Sheehan also found "nunchucks" and a large wooden-handled lock-blade knife.

On May 11, 1998, Gutierrez was charged by information in the district court for Dakota County with possession of a controlled substance, namely methamphetamine; possession of a firearm by a felon; and two counts of carrying a concealed weapon. On October 8, Gutierrez filed a motion to suppress in which he alleged that the seizure and search of his person and the vehicle in which he was a passenger were unconstitutional. After a hearing on the motion to suppress held November 3, the district court denied the motion. We note that the district court made detailed findings of fact as required by *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996). The district court concluded that after initiating the stop of the vehicle, Sheehan could

properly conduct a pat-down search of Gutierrez for weapons because he had a reasonable suspicion that Gutierrez was armed. The district court found that the subsequent searches of Gutierrez' person and the vehicle were permissible searches incident to arrest.

A jury trial was conducted on June 10, 1999. At trial, Gutierrez preserved the issues raised in his motion to suppress. After hearing the evidence, the jury found Gutierrez guilty of all counts. On July 27, Gutierrez was sentenced to imprisonment of 20 to 48 months for possession of a controlled substance, 48 to 72 months for possession of a firearm by a felon, and 8 months for each count of carrying a concealed weapon. The district court ordered that the sentences be served concurrently and granted credit for time served of 480 days. Thereafter, Gutierrez timely appealed.

## III. ASSIGNMENT OF ERROR

Gutierrez assigns that the district court erred in denying his motion to suppress and admitting the evidence seized as a result of the allegedly unconstitutional search and seizure of his person and the vehicle in which he was a passenger.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

■ When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to inferences drawn from those facts by the trial judge. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

### 2. INITIAL STOP

■ Gutierrez does not challenge the validity of the initial traffic stop. It is well established that a traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *Anderson, supra*; *State v. Bartholomew*, 258 Neb. 174, 602 N.W.2d 510 (1999). Sheehan's observation that the driver of the

vehicle failed to use a turn signal when turning right provided probable cause to stop the vehicle.

### 3. CONTINUED DETENTION

Gutierrez argues that Sheehan was not justified in continuing to detain him when the purpose of the stop was to issue the driver a warning for failing to signal, which should have taken only a few minutes. We note that the parties do not dispute that Gutierrez was seized for the purposes of the Fourth Amendment.

When Sheehan stopped the vehicle in this case, he was entitled to conduct an investigation " ' "reasonably related in scope to the circumstances that justified the interference in the first place." ' " *Anderson*, 258 Neb. at 634, 605 N.W.2d at 131 (quoting *U.S. v. Bloomfield*, 40 F.3d 910 (8th Cir. 1994)). A reasonable investigation of a traffic stop may include asking for a driver's license and registration, requesting a driver to sit in the patrol car, and asking the driver about his or her destination and purpose. *Anderson, supra.* An officer may engage in similar routine questioning of the vehicle's passengers. If the responses of those questioned give rise to suspicions unrelated to the traffic offense, the officer may broaden his or her inquiry. *U.S. v. Johnson*, 58 F.3d 356 (8th Cir. 1995). A law enforcement officer may also run a computer check to establish whether the vehicle has been stolen and to ascertain whether there are outstanding arrest warrants for the occupants of the car. *Anderson, supra.* In addition, an officer making a traffic stop may order the driver and passengers to get out of the vehicle, pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997).

If an officer has a reasonable, articulable suspicion that a person is involved in criminal activity unrelated to a traffic violation, the officer may expand the scope of the traffic stop and continue to detain the person for additional investigation. See, *U.S. v. Carrate*, 122 F.3d 666 (8th Cir. 1997); *Anderson, supra.* The Nebraska Supreme Court has explained: " ' " ' "[P]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth amend-

ment." ' " ' . . ." *Anderson*, 258 Neb. at 637, 605 N.W.2d at 133 (quoting *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997)). See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 868, 20 L. Ed. 2d 889 (1968). Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *Anderson, supra; Soukharith, supra.*

Based upon our de novo review of the record, we conclude that under the totality of the circumstances, Sheehan had a reasonable suspicion based on sufficient articulable facts to expand the scope of the traffic stop and continue to detain Gutierrez for additional investigation. See *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). After Sheehan initiated the traffic stop, he observed Gutierrez, the passenger in the vehicle, make a movement that Sheehan interpreted as an attempt to conceal something under his seat. After the vehicle stopped, Sheehan observed, as he approached the vehicle, that Gutierrez was bent over and "appeared to be placing something under . . . his left leg." Based on his training and experience, Sheehan was concerned that Gutierrez was "attempting to conceal a weapon" or other contraband. Sheehan's continued questioning of Gutierrez and the driver after Sheehan lawfully removed Gutierrez from the vehicle caused Sheehan further concern due to Gutierrez' confusion about his alleged birth date and the driver's and Gutierrez' inconsistent responses. We note that consistent with the Nebraska Supreme Court's holding in *Anderson, supra*, we do not give great consideration to Sheehan's testimony regarding the nervousness of the driver and Gutierrez, the placement of Gutierrez' hands on his knees, and the lack of eye contact by Gutierrez. Nevertheless, those things together with observation of movements like those made by Gutierrez give a police officer a reasonable suspicion that the person is armed or in possession of contraband. Thus, the officer may expand the scope of the traffic stop to further investigate and protect himself or herself.

### 4. PAT-DOWN SEARCH

We next address the propriety of the pat-down searches of Gutierrez in which Sheehan discovered the throwing stars which led to Gutierrez' arrest. It is well established that pursuant

to *Terry, supra,* an officer is entitled, for the protection of himself or herself and others in the area, to conduct a carefully limited search of the outer clothing of a person stopped on *Terry* grounds to discover weapons which might be used to assault the officer. See, *In re Interest of Andre W.,* 256 Neb. 362, 590 N.W.2d 827 (1999); *State v. Craven,* 253 Neb. 601, 571 N.W.2d 612 (1997). However, if the pat-down search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid and its fruits will be suppressed. *Craven, supra.* A "second pass" to palpate the subject's clothing for drugs is improper in the context of a *Terry* stop. *State v. Chitty,* 5 Neb. App. 412, 559 N.W.2d 511 (1997).

We conclude that the pat-down searches conducted by Sheehan in the present case were reasonable and proper under the totality of the circumstances. While Sheehan was conducting the traffic stop alone, he conducted a cursory pat-down search for weapons in which he patted the front and back of Gutierrez' waistband. When another police officer arrived, Sheehan completed the pat-down search for weapons. At this time, he patted Gutierrez' arms, under his arms, and his waistband. The pat-down search remained on the outside of Gutierrez' clothing and was limited to searching for weapons. Based on our review of the evidence, Sheehan's pat-down search did not expand to an impermissible search for drugs or other contraband.

### 5. ARREST AND SUBSEQUENT SEARCHES

During the pat-down search, Sheehan felt the sharp points of what he believed to be a weapon called a throwing star. Sheehan then opened the pouch attached to Gutierrez' belt and retrieved three throwing stars. We note that Sheehan did not contend below or on this appeal that the search exceeded the scope of permissible pursuant to the plain-feel doctrine. See *In re Interest of Andre W., supra.* At this point, Sheehan had probable cause to arrest Gutierrez for possession of a concealed weapon. See *State v. Soukharith,* 253 Neb. 310, 570 N.W.2d 344 (1997) (officer has probable cause to arrest without warrant when he or she has knowledge based on reasonably trustworthy information which justifies prudent belief that suspect is committing or has committed crime). Incident to Gutierrez' arrest, Sheehan could

properly search Gutierrez' person, see *State v. Brooks*, 5 Neb. App. 463, 560 N.W.2d 180 (1997), and the vehicle in which he was a passenger, see *State v. Claus*, 8 Neb. App. 430, 594 N.W.2d 685 (1999).

## V. CONCLUSION

For the reasons stated above, we conclude that the evidence obtained as a result of the pat-down search and the subsequent searches of Gutierrez' person and the vehicle was admissible at trial. Therefore, we conclude that the district court did not err in denying Gutierrez' motion to suppress and admitting this evidence at trial.

AFFIRMED.

SIEVERS, Judge, participating on briefs.