STATE OF NEBRASKA, APPELLEE, V.
CRYSTAL R. SPARR, APPELLANT.
688 N.W.2d 913

Filed November 23, 2004. No. A-03-1346.

Mark E. Rappl for appellant.

John C. McQuinn, Chief Lincoln City Prosecutor, for appellee.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

Crystal R. Sparr appeals the decision of the Lancaster County District Court affirming the Lancaster County Court's order finding Sparr guilty of driving under the influence of alcohol (DUI) and sentencing her to 12 months' probation. We address the legality of a police officer's detention of Sparr, an "innocent bystander" at a crime investigation scene, followed by her arrest.

## FACTUAL BACKGROUND

On December 6, 2002, at about 1:10 a.m., in the area of 11th and F Streets in Lincoln, Nebraska, Sparr was dropped off at her parked vehicle by her friend Kristina Mahoney. As Sparr entered her vehicle, which was legally parked in a residential area, Officer Daren Reynolds of the Lincoln Police Department stopped Mahoney's vehicle, northbound on 11th Street, for impeding traffic. In making the traffic stop, Reynolds activated his cruiser's overhead lights and positioned his cruiser off center to the left of Mahoney's vehicle by half a vehicle's width and 15 feet behind Mahoney's vehicle. Sparr's vehicle was in the parking lane directly to the east of the cruiser. Reynolds approached Mahoney's vehicle, asked her for her license and registration, informed her of the purpose for the stop, and then returned to his cruiser. He then repositioned his cruiser farther to the left of Mahoney's vehicle because he wanted to capture with the cruiser's video camera the field sobriety test he intended to administer to Mahoney, having smelled alcohol on her breath. As he exited his cruiser to return to Mahoney, he observed Sparr's vehicle move backward about 3 to 5 feet. He then pointed at

Sparr and told her, " 'No.' " Sparr stopped her vehicle and waited. Reynolds had Mahoney exit her vehicle, and then he conducted a number of field sobriety tests which led to Mahoney's arrest for suspicion of DUI. This entire process took 10 minutes.

Reynolds then approached Sparr's vehicle and asked her for her license and registration because she had been a passenger in Mahoney's vehicle; the information on those documents would be placed on the report of Mahoney's arrest as a matter of standard procedure. Upon contacting Sparr, Reynolds immediately smelled a "strong odor of alcohol" on her breath. He then told her that she may be too drunk to drive and that another officer would be called to test her. Sparr was subsequently arrested for DUI.

## PROCEDURAL BACKGROUND

Sparr was charged in Lancaster County Court for DUI. Sparr filed a motion to suppress, a hearing was held, and the county court overruled the motion. The court reasoned that Sparr "was not detained for the purpose of investigating her for a crime, so therefore the subsequent evidence gathered against her once she had personal contact with . . . Reynolds was not in violation of her constitutional rights." The case proceeded to trial, where Sparr made a continuing objection to any evidence gathered after her arrest due to an unlawful detention, as argued in the motion to suppress. The court overruled the objection and found Sparr guilty of DUI. She was sentenced to 12 months' probation.

Sparr appealed her conviction and sentence, as well as the county court's order denying the motion to suppress, to the district court. The district court found that the county court had properly overruled the motion to suppress, and it affirmed the county court's judgment and sentence. Sparr timely appeals.

## ASSIGNMENT OF ERROR

Sparr asserts that the "district court committed reversible error in affirming the county court's overruling of [her] motion to suppress and thus allowing into evidence at the trial of this matter, over [her] objection, any evidence seized by law enforcement" because such seizure was in violation of article I, § 7, of the Nebraska Constitution and the 4th and 14th Amendments to the U.S. Constitution.

## STANDARD OF REVIEW

Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than as a trial court, and its review is limited to an examination of the county court record for error or abuse of discretion. *State v. Koncaba*, 12 Neb. App. 378, 674 N.W.2d 485 (2004). Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *Id.* In reviewing a trial court's ruling on a motion to suppress evidence, ultimate determinations of reasonable suspicion are reviewed de novo by an appellate court, while findings of historical fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Kelley*, 265 Neb. 563, 658 N.W.2d 279 (2003).

## ANALYSIS

We begin with the proposition that a person is not protected by the Fourth Amendment from any government intrusion, but only those actions that are unreasonable. *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990).

Evidence obtained as the fruit of an illegal search or seizure, in violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, is inadmissible in a state prosecution and must be excluded. *State v. Koncaba, supra.*

The Nebraska Supreme Court in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), discussed the three levels, or categories, of police-citizen encounter, each of which triggers a different analysis of the balance between the government's need to search and the invasion of privacy that such search entails. The first category, which is outside the Fourth Amendment's protection, involves no restraint of the citizen's liberty, but, rather, the officer elicits the voluntary cooperation of the citizen through noncoercive questioning. The second category is the investigative stop, defined by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The *Terry* stop is " 'limited to brief, non-intrusive detention during a frisk for weapons or preliminary questioning' " and is considered a " ' "seizure" ' " for the purpose of invoking Fourth Amendment rights. *State v. Van Ackeren*, 242

Neb. at 486, 495 N.W.2d at 636. The third category of encounter is the arrest—a highly intrusive or lengthy search or detention. An arrest must be justified by probable cause to believe that a person has committed or is committing a crime. See *State v. Van Ackeren, supra.*

 It is Sparr's contention that Reynolds' actions in placing his cruiser next to her vehicle, obstructing her exit, and then authoritatively stating " 'No' " when she attempted to leave constituted a seizure which invoked the protections of the U.S. and Nebraska Constitutions. "A person is seized within the meaning of the fourth amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." *State v. Prahin,* 235 Neb. 409, 413, 455 N.W.2d 554, 558 (1990), citing *United States v. Mendenhall,* 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). Seizure, for the purpose of the Nebraska Constitution, requires either an officer's application of physical force to a suspect or a suspect's submission to an officer's show of authority. See *State v. Cronin,* 2 Neb. App. 368, 509 N.W.2d 673 (1993). See, also, *State v. Boysaw,* 228 Neb. 316, 422 N.W.2d 346 (1988) (seizure occurs when reasonable person would have believed that his or her freedom of movement had been restrained, either by means of physical force or by show of authority); *State v. Horn,* 218 Neb. 524, 357 N.W.2d 437 (1984) (circumstances that might indicate seizure even where person did not attempt to leave might be use of language or tone of voice indicating that compliance with officer's request might be compelled).

The county court found that Sparr

> was not detained for the purpose of investigating her for a crime, so therefore the subsequent evidence gathered against her once she had personal contact with . . . Reynolds was not in violation of her constitutional rights. There is no evidence she could not have walked away from her vehicle if she did not wish to wait for the conclusion of the officer[']s investigation of [Mahoney.] Reynolds had a duty to protect [Mahoney,] who was being required to perform field sobriety tests in the street. . . . Reynolds knew Sparr was a witness to the [potential DUI] he was investigating and he was

entitled to contact her as part of his investigation as long as his actions were reasonable under the circumstances.

In affirming the county court's order, the district court found that although Sparr's vehicle's movement was restricted, "[i]t does not necessarily follow that a person is subjected [sic] to a seizure just because their [sic] vehicle is seized or its movement restricted." However, "in view of all the circumstances," the district court wrote, "a reasonable person in [Sparr's] position might not have believed they were free to leave and arguably a seizure occurred." Therefore, the district court assumed that a seizure occurred, but found that the detention was reasonable because Sparr was a passenger in Mahoney's vehicle and a witness to Mahoney's criminal activity. The court also found that the detention lasted only 10 minutes and that such time was reasonable in light of all the circumstances.

Reynolds testified that Sparr would have had to "maneuver" her vehicle to get out of the parking area due to the location of his cruiser next to her parked vehicle. Although she tried to leave the area at one point, when she backed her vehicle up 3 to 5 feet, Reynolds "rather strongly" told Sparr " 'No,' " intending that she "stay where she was at." At that point, she stopped moving the vehicle and complied with his command to stay there. Under cross-examination, Reynolds testified that when he told Sparr " 'No,' " it "mean[t] she's not free to leave." He also stated, "She was detained merely for the purpose of my safety and [Mahoney's], is why she was detained and she could not leave," and, "She wasn't able to leave because of [sic] my police cruiser was there . . . ." He explained that the only way she could have left was to have driven between his cruiser and Mahoney's vehicle in the area where he was conducting the field sobriety tests on Mahoney. Reynolds said that for his safety, for Mahoney's safety, and to avoid damage to his cruiser, he told Sparr "to stay where she was at" when she started moving her vehicle. However, he testified that had she chosen to walk away, "[s]he'd [have] been gone" and he would not have chased after her.

Nonetheless, when Reynolds, dressed in full uniform with badge and weapon and having arrived in a standard marked cruiser with the overhead lights on, firmly told Sparr " 'No,' " he

asserted a show of authority, with which Sparr complied. In view of all the circumstances surrounding the incident, we find that a reasonable person would have believed that she was not free to leave. Accordingly, Sparr was seized, meaning that our analysis must turn to the reasonableness of this seizure. We note that this seizure, or detention, does not fit precisely into any of the three categories of police-citizen encounter detailed in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993)—she was not arrested, it was not a *Terry* stop, and it was not voluntary compliance by a citizen after a noncoercive contact between a police officer and that citizen.

■ While we have accepted Sparr's argument that she was detained and not free to leave, Sparr would have us then proceed to the question of whether Reynolds had a reasonable suspicion of criminal activity by Sparr to justify an investigatory stop of Sparr. The law is well established that " '[p]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth amendment.' " *State v. Childs*, 242 Neb. 426, 433, 495 N.W.2d 475, 479 (1993). But, analysis under such a framework does not fit, because Reynolds freely admits that when he told Sparr by the command " 'No' " not to move her vehicle, he had "absolutely" no suspicion of criminal activity, and that he was acting solely upon safety concerns for Mahoney, the suspect he was investigating; himself; and his cruiser, given the location of her vehicle, his cruiser, and Sparr's vehicle.

■ The district court concluded that because Sparr was in the process of exiting Mahoney's vehicle when the traffic stop was made, she could be reasonably detained as a passenger in Mahoney's vehicle while Reynolds conducted his investigation of Mahoney, and that the 10-minute detention was reasonable. We acknowledge that there is ample authority allowing police officers to control passengers during a traffic stop. For example, in *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997), the U.S. Supreme Court found that an officer may order passengers out of the vehicle during a legal traffic stop because the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the

driver in the stopped car." The district court in the instant case relied in part on our decision in *State v. Gutierrez*, 9 Neb. App. 325, 611 N.W.2d 853 (2000), but therein we found that an officer who made a valid initial traffic stop also had reasonable suspicion with respect to the passenger, Michael R. Gutierrez, who was observed attempting to hide something under a seat and under his left leg. Thus, in *State v. Gutierrez*, we found that an officer may "expand the scope of the traffic stop to further investigate and protect himself." 9 Neb. App. at 331, 611 N.W.2d at 859. *State v. Gutierrez* is distinguishable on its facts from the instant case because of the lack, clearly admitted by Reynolds in his testimony, of any reasonable suspicion that Sparr was involved in criminal conduct at the time when Reynolds ordered her to stay.

The district court found there was no dispute that Sparr "was a passenger in Mahoney's car and was in the process of exiting the vehicle" when Reynolds stopped Mahoney. However, while she had been a passenger, the evidence is undisputed that she was not a passenger at the time Reynolds detained her with his command, " 'No.' " (The record includes a videotape of these events with audio.) Testifying in county court, Reynolds replied to counsel's questions as follows:

Q At what point did you recognize that . . . Sparr was a passenger in the vehicle that you were making a traffic stop on?

A Actually, at the time I was doing the traffic stop she had exited the vehicle, gotten into her vehicle and I made contact with [Mahoney, whom] I had initiated the traffic stop with.

. . . .

Q The — as you were contacting this vehicle that was stopped, that you believe was obstructing the traffic lane, you said at this point . . . Sparr or someone you ultimately identified as . . . Sparr was actually exiting the vehicle?

A Yes, as I initiated the overhead lights, yes, she was exiting the vehicle, and getting into her vehicle.

. . . .

Q And as you approached the vehicle that you were looking to, I guess[,] contact surrounding this traffic violation,

by the time you had actually reached the vehicle . . . Sparr had already exited the vehicle, is that correct?

A Yes, that is correct.

Q And in fact, would it be a true statement to say that she was standing beside her vehicle as you were approaching?

A Yes.

Further, in his report, Reynolds stated, "Mahoney's veh[icle] was stopped as it accelerated away from dropping off [Sparr] at her car." Accordingly, it is evident that Sparr had exited Mahoney's vehicle and Mahoney was accelerating to leave when Reynolds stopped her. Therefore, because Sparr was not a passenger when seized, the cases such as *Maryland v. Wilson, supra,* addressing a police officer's ability to control a passenger of a legally stopped vehicle are not applicable.

We think the most apt characterization of Sparr during the time she was detained while Reynolds was investigating Mahoney, and before she was personally contacted by Reynolds, is that she was an "innocent bystander." Sparr was not a passenger at the time of the stop, was in her own vehicle, and was not suspected of any crime. Thus, the question becomes under what circumstances may a police officer exercise authority over, including the ability to detain, a person who is a bystander to the investigation of a crime. We have not found a Nebraska case which provides an on-point answer. We find *Eisnnicher v. Bob Evans Farms Restaurant,* 310 F. Supp. 2d 936 (S.D. Ohio 2004), instructive. *Eisnnicher* is a false arrest case involving a *Terry* stop of two men and a woman, Barbara E. Eisnnicher, after the two men were overheard discussing bank robbery and " 'jobs' " in a restaurant while they ate with Eisnnicher. *Id.* at 943. While there had been recent robberies in the area, and while a restaurant employee had told police that he recognized one of the men from a " 'Crime Stoppers' " broadcast the day before, *id.,* the police could justify Eisnnicher's 17-minute detention after Eisnnicher and the two men left the restaurant only on the basis that she was with the two men. While the court in *Eisnnicher* granted summary judgment to the defendants as to the two men, the court found that Eisnnicher has created a genuine issue of material fact as to the "reasonableness of her detention." *Id.* at 956. Directly applicable here is the following observation from the *Eisnnicher* opinion:

Even absent particularized reasonable suspicion, however, courts have held that, where necessary to secure the scene of a valid search or arrest and ensure the safety of officers and others, "innocent bystanders" may be temporarily detained. *See, e.g., Michigan v. Summers*, 452 U.S. 692, 704-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

310 F. Supp. 2d at 951.

In *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), the U.S. Supreme Court held that the occupants of a residence where officers were conducting a search pursuant to a valid warrant may be detained in order to prevent flight, minimize the risk of harm to officers, and conduct an orderly search. See, also, *In re Interest of Andre W.*, 7 Neb. App. 539, 584 N.W.2d 474 (1998), *aff'd* 256 Neb. 362, 590 N.W.2d 827 (1999) (officers' seizure of defendant, who they reasonably believed occupied apartment being searched pursuant to valid warrant, was constitutionally permissible). The *Eisnnicher* court said that the cases allowing detention of bystanders for officer safety have the common thread that there must be a " 'justifiable fear [for] personal safety.' " 310 F. Supp. 2d at 951. See, also, *Ingram v. City of Columbus*, 185 F.3d 579 (6th Cir. 1999). We note, however, that the *Summers* Court did not require any showing that there was a special danger to the police, because it found that the nature of the transaction—in *Summers*, the execution of a search warrant for illegal drugs—"may give rise to sudden violence or frantic efforts to conceal or destroy evidence." 452 U.S. at 702. Applying these concepts to the instant case, this situation obviously does not involve what might be called the "presumption of potential sudden violence" which the *Summers* Court found was inherent in the execution of a search warrant for illegal drugs. This case involves two young women and two separate, but indirectly related, DUI investigations.

However, the evidence was that the location of the vehicles was such that Sparr could not drive away without driving between the rear of Mahoney's vehicle and the front of Reynolds' cruiser. This was the area where Reynolds was located and where he was going to have Mahoney perform the field sobriety tests. A police officer may take reasonable steps to ensure his personal safety and maintain the status quo during an investigative stop.

*State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997), citing *U.S. v. Brown*, 51 F.3d 131 (8th Cir. 1995). Proceeding by analogy, we have upheld the power of an officer to order a citizen to leave an investigation scene (the converse of Reynolds' directive herein for Sparr to stay put) so as not to interfere with the conduct of the investigation and jeopardize the safety of the officer and those being investigated. See *State v. Hookstra*, 10 Neb. App. 199, 630 N.W.2d 469 (2001), *aff'd* 263 Neb. 116, 638 N.W.2d 829 (2002). Thus, when Sparr attempted to maneuver her vehicle into the area where Reynolds was located outside his cruiser, at a time when he was going to have Mahoney perform field sobriety tests in that spot, Sparr could be ordered to stay put. In *State v. Hookstra*, 10 Neb. App. at 213-14, 630 N.W.2d at 481, we said:

> Clearly, an officer may order onlookers whose disruptive behavior poses a threat to the safety of the officer and his suspect to leave the scene of an arrest. See, *Seattle v. Abercrombie*, 85 Wash. App. 393, 945 P.2d 1132 (1997) (ability of police officers to restrict public access to crime scene serves significant governmental interest both in facilitating thorough investigation and ensuring safety of everyone at scene); *Wilkerson v. State*, 556 So. 2d 453, 456 (Fla. App. 1990) (under Florida statute penalizing obstruction of police work "[p]olice officers may lawfully demand that citizens move on and away from the area of a crime without impermissibly infringing upon the citizen's First Amendment rights"); *State v. Manning*, 146 N.J. Super. 589, 591, 370 A.2d 499, 500 (1977) (under New Jersey statute penalizing interference with police work, court found it "perfectly reasonable" for arresting officer to require no distraction from passenger when conducting DUI investigation).

Therefore, remembering that the Fourth Amendment guards against only unreasonable seizures, see *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990), we find that the brief 10-minute seizure of Sparr while Reynolds completed his investigation of Mahoney and before Reynolds acquired reasonable suspicion to investigate Sparr for DUI upon contacting her was not unreasonable. It was done for the safety of Reynolds and Mahoney, and given the location of Mahoney's and Sparr's vehicles, as well as

Reynolds and Mahoney, it was a reasonable safety measure to have Sparr remain parked while Reynolds did the investigation of Mahoney. Thus, while we find that Sparr was seized, it was not unreasonable, as it was limited in time and scope and was done out of justifiable concerns for safety.

Finally, while Sparr argues that Reynolds stopped his cruiser so as to "box [her] in," brief for appellant at 12, careful review of the videotape shows that where Reynolds stopped his cruiser was dictated by where Mahoney stopped her vehicle. Reynolds stopped a short distance behind Mahoney and positioned his cruiser to the left of her rear bumper to enable the video camera to capture his interaction with her. In any event, to the extent that this argument is designed to bolster the conclusion that Sparr was seized, we agree that she was seized. But, she was not seized or detained in violation of the Fourth Amendment. Accordingly, while our reasoning is slightly different from the trial court's, we find that the trial court did not err in overruling the motion to suppress and that the district court did not err in its affirmance of that ruling.

AFFIRMED.