**STATE of Missouri, Appellant,**

v.

**Kerri K. DRURY, Respondent.**

**No. ED 96754.**

Missouri Court of Appeals, Eastern District, Southern Division.

Nov. 29, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 2012.

Application for Transfer Denied March 6, 2012.

---

Carl D. Kinsky, Prosecuting Attorney for Ste. Genevieve County, Ste. Genevieve, MO, for Appellant.

Robert D. Huelskamp, Rottler & Huelskamp, P.C., Ste. Genevieve, MO, for Respondent.

KURT S. ODENWALD, Chief Judge.

### Introduction

The State of Missouri (State) appeals from the trial court's order suppressing evidence related to the arrest of Kerri Drury (Drury) for driving while intoxicated. The trial court found that Drury was detained in violation of the Fourth Amendment, ordered the evidence suppressed, and dismissed the charges against her. After reviewing the record, we find that Drury was not seized in violation of the Fourth Amendment. Drury's original detention was constitutionally permissible because it was initiated for the purpose of officer safety at the scene of an arrest and was limited in scope and duration. We also find that Drury's continued detention was based upon an officer's reasonable suspicion that she had committed a crime, and was therefore also constitutionally permissible. Accordingly, we reverse the trial court's order suppressing evidence obtained in connection with Drury's detention, and dismissing the State's charges against Drury.

### Factual and Procedural History

The facts of this case are not in dispute. Around 11 p.m., Corporal William Sevier (Cpl. Sevier) observed a Ford Ranger traveling approximately ten miles per hour above the speed limit. Cpl. Sevier also observed a Ford Escape traveling near the Ranger, but not breaking any traffic laws or otherwise driving erratically. Cpl. Sevier pulled behind the Ranger and turned on his emergency lights. Although the road had a shoulder, the Ranger did not stop. Cpl. Sevier turned on his siren. The Ranger still did not stop. Cpl. Sevier requested officer backup. After approximately a quarter mile, the Ranger pulled into a driveway and parked next to the Escape, which was already parked in the driveway. The location was later determined to be the home of both drivers.

Cpl. Sevier approached the driver of the Ranger, Byron Drury (Byron), smelled alcohol on his breath, saw that his eyes were bloodshot, and heard that his speech was slurred. As Cpl. Sevier addressed Byron, Drury, the sole occupant of the Ford Escape, started to exit her vehicle. Cpl. Sevier ordered Drury to remain in her vehicle while he investigated Byron for suspicion of driving while intoxicated. Drury complied with the request.

Sergeant Steven Poole (Sgt. Poole) arrived on the scene several minutes later. Cpl. Sevier asked Sgt. Poole to monitor Drury while he investigated Byron. Sgt. Poole then observed Drury beginning to exit her vehicle and asked her to remain where she was for a few minutes. Sgt. Poole smelled alcohol on Drury and noted that she had slurred speech. Sgt. Poole reported to Cpl. Sevier that he had observed signs that Drury was intoxicated. Cpl. Sevier requested that Sgt. Poole continue to watch Drury while he finished conducting a field sobriety test of Byron. When Sgt. Poole returned to Drury, she was again attempting to exit her car. Sgt. Poole requested that Drury move away from the area where Cpl. Sevier was conducting Byron's field sobriety test. Sgt. Poole testified that he moved Drury due to officer safety concerns because she was too close to Cpl. Sevier and Byron. Cpl. Sevier concluded his field sobriety test of Byron and placed him under arrest for driving while intoxicated.

After arresting Byron, Cpl. Sevier returned to Drury who was still detained by Sgt. Poole. Cpl. Sevier questioned Drury regarding her drinking, conducted a breathalyzer test, and requested that Drury recite the alphabet and count down from 67 to 43. Drury blew a 0.10 B.A.C., slurred during the alphabet test, and stated she was unable to perform the counting test. Cpl. Sevier placed Drury under arrest for driving while intoxicated.

The State filed charges against Drury in the Circuit Court of Saint Genevieve Country for driving while intoxicated. Drury filed a motion to suppress all evidence related to her arrest on grounds that she was unlawfully detained in violation of her Fourth Amendment rights. Drury argued that Cpl. Sevier did not have probable cause or reasonable suspicion to detain Drury because he had not observed her break any traffic laws or drive erratically. Drury argued that her detention, therefore, violated the Fourth Amendment and all evidence obtained in connection with her detention should be suppressed. Following a hearing, the trial court granted Drury's motion to suppress and dismissed the charges against Drury. The State now appeals.

*Point on Appeal*

In its sole point on appeal, the State argues that the trial court erred in granting Drury's motion to suppress all evidence related to her arrest, and thereafter entering an order dismissing the State's case against her.[1] The State contends that Cpl. Sevier initially detained Drury for reasons of officer safety, and that Drury's

subsequent detention was based upon probable cause that she had committed an offense. Accordingly, the State argues that neither of Drury's detentions was unreasonable under the Fourth Amendment.

*Standard of Review*

When reviewing a trial court's judgment suppressing evidence, the facts and reasonable inferences derived therefrom are viewed in the light most favorable to the trial court's decision. *State v. Williams,* 334 S.W.3d 177, 179 (Mo.App. W.D.2011). We reverse only if the trial court's decision is clearly erroneous. *State v. Bibb,* 922 S.W.2d 798, 802 (Mo.App.E.D.1996).

*Discussion*

I. *Drury's detention was not an unreasonable seizure under the Fourth Amendment.*

■ The Fourth Amendment to the U.S. Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. A person is seized within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California,* 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (internal quotations and citations omitted).

The facts of this case present two separate and distinct seizures of Drury under the Fourth Amendment. The first seizure occurred when Cpl. Sevier ordered Drury to remain in her car until another officer arrived at the scene so that he could inves-

---

1. Drury also filed a motion to dismiss the State's appeal as untimely. Drury asserts that under Section 547.200.4, RSMo 2000, the State's notice of appeal from an interlocutory order suppressing evidence must be filed within five days of the order. However, the trial court's order suppressing the evidence also dismissed the case entirely. The appeal is therefore taken from a final judgment, not an interlocutory order, and is timely under Section 547.200.2, RSMo, 2006. *State v. Brown,* 140 S.W.3d 51, 53 (Mo. banc 2004); Mo. R.Crim. P. 30.01(d), 2011. Drury's motion is accordingly denied.

tigate and arrest Byron for driving while intoxicated. Any reasonable person in Drury's position would have determined that she was unable to leave the scene as a result of the Cpl. Sevier's demonstration of authority in ordering her to remain in her vehicle. *See id.* Therefore, her original detention by Cpl. Sevier constitutes a Fourth Amendment seizure. The second seizure occurred after Sgt. Poole reported to Cpl. Sevier that he believed Drury was intoxicated, and Cpl. Sevier had Sgt. Poole detain Drury for the purpose of investigating whether she had driven while intoxicated. When Cpl. Sevier's purpose for detaining Drury changed from securing the scene of an arrest to investigating Drury for suspicion of committing a crime, the second seizure began. We analyze the constitutionality of each seizure in turn.

A. *Drury's original detention was reasonable because it was limited in duration and was in response to a legitimate risk to officer safety.*

■ We are first asked to consider whether an officer may reasonably detain a bystander for a limited duration in response to officer safety concerns during the investigation of a crime to which the bystander is not a suspect. Although we find no precedent in our own jurisdiction addressing this specific question, we find instructive judicial authority in other jurisdictions holding that such a detention is not unreasonable of the Fourth Amendment.

The Fourth Amendment protects against only unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security[.]" *Maryland v. Wilson,* 519 U.S. 408, 411, 117 S.Ct. 882,

137 L.Ed.2d 41 (1997) (internal citations omitted). Reasonableness depends upon the balance between public interest and the individual's right to be free from arbitrary interference by police officers. *Id.*

Officer safety is a weighty and legitimate governmental interest. *Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The risk of harm to officers is minimized when police officers "exercise unquestioned command of the situation." *Michigan v. Summers,* 452 U.S. 692, 702–03, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). It is reasonable "to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." *Brendlin,* 551 U.S. at 258, 127 S.Ct. 2400; *Mimms,* 434 U.S. at 111, 98 S.Ct. 330 (officer may order a driver out of the car as a matter of course without violating the Fourth Amendment); *Wilson,* 519 U.S. at 414–15, 117 S.Ct. 882 (officer may order a passenger out of a car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk).

Recognizing the importance of protecting officer safety, several courts have upheld the constitutionality under the Fourth Amendment of protective detentions, where an officer briefly detains an individual to reduce a perceived threat of harm to themselves, or others. *State v. Sparr,* 13 Neb.App. 144, 688 N.W.2d 913, 922 (2004); *U.S. v. Maddox,* 388 F.3d 1356, 1363 (10th Cir.2004) (holding "officer safety may justify protective detentions[ ]"); *Thompson v. City of Lawrence,* 58 F.3d 1511, 1517 (10th Cir.1995) ("The governmental interest in securing the area around [a suspect during an arrest] and protecting officers from potential danger is sufficient to justify the temporary detention of [an innocent bystander]."); *see also Weimer v. Schraeder,* 952 F.2d 336, 340 (10th Cir.1991), *cert.*

*denied* 505 U.S. 1210, 112 S.Ct. 3006, 120 L.Ed.2d 881 (1992) (officer acted reasonably in restraining passenger from leaving the scene of an accident for passenger's own safety and because passenger had witnessed accident); *U.S. v. Clark,* 337 F.3d 1282, 1288 (11th Cir.2003) (officer did not unreasonably seize defendant by forcing him to re-enter the car defendant had just exited so that officer could investigate an altercation between car's other occupants when officer was alone at night in the presence of three men).

▆▆▆ The relevant constitutional inquiry is whether the governmental interest in briefly detaining an individual is reasonable when balanced against the individual's right to be free from government intrusion. *Wilson,* 519 U.S. at 414–15, 117 S.Ct. 882. Protective detention is reasonable when it is for a limited duration, and when the individual's presence could create a risk of harm to the officer, the individual detained, or the public at large, even if the officer has no reason to believe the individual would intentionally cause harm. *State v. Sparr,* 13 Neb.App. 144, 688 N.W.2d 913, 922 (2004); *see also Weimer v. Schraeder,* 952 F.2d 336, 340 (10th Cir. 1991), *cert. denied* 505 U.S. 1210, 112 S.Ct. 3006, 120 L.Ed.2d 881. As with any seizure under the Fourth Amendment, the detention must be strictly limited to only the duration and level of restraint necessary to render the area safe. *Smith v. Kenny,* 678 F.Supp.2d 1124, 1172 (D.N.M. 2009).

We examine the reasonableness of Drury's detention within the context of the circumstances as they existed at the time. Cpl. Sevier was a lone officer attempting to conduct a lawful arrest of an intoxicated suspect who did not stop when Cpl. Sevier attempted to pull over his vehicle. When Byron finally did pull over, it was in close proximity to another person. Cpl. Sevier

testified that he initially detained Drury by asking her to remain in her vehicle because he was attempting to investigate whether the driver of the other vehicle had committed a crime, and because it was potentially dangerous to have two people out of their vehicles at the same time while he was the only officer at the scene. Sgt. Poole testified about the potential danger to Cpl. Sevier had Drury been allowed to exit her car before another officer arrived at the scene. Cpl. Sevier also testified that once a second officer arrived, which occurred minutes later, he planned to allow Drury to leave the scene without further investigation.

Drury argues that her initial seizure was unreasonable under the Fourth Amendment because Cpl. Sevier lacked probable cause to stop her vehicle. Drury asserts that Cpl. Sevier did not observe her commit any crime and therefore did not have probable cause to detain her. *See State v. Loyd,* 326 S.W.3d 908, 911 (Mo.App. W.D. 2010). Drury's argument is misguided because Cpl. Sevier did not stop Drury's vehicle; he stopped her husband's car. The record is clear that only after Drury pulled into the driveway and parked her car, did Cpl. Sevier approach Drury. The State does not argue that Cpl. Sevier had, or needed, probable cause to stop Drury, but asserts that after Drury parked her car, Cpl. Sevier acted reasonably in detaining her until another officer arrived at the scene. The evidence in the record is uncontradicted that Cpl. Sevier did not initially detain Drury in order to investigate her for the commission of any possible crime, but solely out of concerns for officer safety. Drury's argument that the seizure was unreasonable due to the lack of probable cause has no merit.

Drury also argues that if we hold that Cpl. Sevier's detention of Drury was constitutionally permissible, then we must also

conclude that the Fourth Amendment allows officers to detain anyone passing by the scene of an investigation or arrest. We are not persuaded by this overly broad characterization of the facts before us. The facts of this case demonstrate that Drury was not a distant passerby; she was directly within the scene of a suspect's investigation and arrest. The record is clear that Drury's vehicle was parked so closely to Byron's vehicle that he actually had to exit the car through the passenger door of his vehicle. Being in such close proximity to a suspect and the scene of an arrest, the danger to Cpl. Sevier was heightened, making Drury's detention reasonable. *See United States v. Clark*, 337 F.3d 1282, 1288 (11th Cir.2003), *citing Hudson v. Hall*, 231 F.3d 1289, 1297 (11th Cir.2000) ("an officer may 'control' persons not suspected of wrongdoing if they are near a street encounter with persons reasonably suspected of criminal activity."); *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir.2002), *citing United States v. Brown*, 159 F.3d 147, 150 (3d Cir.1998) ("an individual's proximity to illegal activity may [ ] be considered" when determining whether there were reasonable grounds to justify a detention.).

■ Nor was Drury an uninvolved passerby. Cpl. Sevier observed the vehicles travel from the highway to the driveway as a pair. Both vehicles parked in the driveway of the same residence. Under these facts, Cpl. Sevier could reasonably conclude that the drivers might have some connection. A relationship between a suspect and a bystander at the scene of an arrest increases the reasonableness of the bystander's detention. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995).

Drury's original detention lasted only a few minutes until a second officer arrived and secured the scene of a suspect's ar-

rest. Drury's detention was in response to a police officer's reasonably perceived risk of harm. Under these circumstances, after reviewing the record and weighing the governmental interest of officer safety against the liberty interest of an individual to be immediately free to leave the scene of an arrest and investigation, we are not persuaded that Cpl. Sevier's actions in initially detaining Drury were unreasonable under the Fourth Amendment.

*B. Cpl. Sevier's subsequent detention of Drury for the purposes of conducting a field sobriety test was reasonable because he had a reasonable suspicion that she had driven while intoxicated.*

■ Next, we consider the constitutionality of Drury's subsequent seizure under the Fourth Amendment. The second seizure occurred when the officers no longer detained Drury out of concerns for officer safety, but detained her for the purposes of investigating whether she had operated her vehicle while intoxicated. Such an investigatory seizure requires reasonable suspicion of criminal activity. *State v. Waldrup*, 331 S.W.3d 668, 673 (Mo. banc 2011), *citing Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Drury argues that Cpl. Sevier did not observe any facts that gave him a reasonable suspicion that Drury had engaged in any criminal activity. We disagree. The record reveals that Cpl. Sevier observed the Ford Escape being driven on the highway and park in the driveway. While Cpl. Sevier did not see the driver of the Escape while it was being driven, he observed the Escape come to a stop in the driveway, and saw Drury exiting the car from the driver's seat after the car came to a stop. Drury was the only person in the vehicle. There is no evidence in the record that Cpl. Sevier lost sight of the Ford Escape from the time he first saw it until it came to a stop in the driveway. The record also

shows that Sgt. Poole smelled a strong odor of alcohol coming from Drury immediately as she exited the Escape, and further observed that her speech was slurred. These observations created a reasonable suspicion that Drury was the driver of the Ford Escape, and that she had driven the Escape while intoxicated. These observations provided probable cause for the officers to detain Drury in order to conduct a field sobriety test.

Drury contends that her detention for investigatory purposes was unreasonable because Cpl. Sevier did not actually see her operate the Ford Escape. Drury asserts that if Cpl. Sevier did not see her driving the car, then he had no reason to suspect that she had driven while intoxicated. Drury correctly states that when Cpl. Sevier first saw the Escape, he could not see the driver. However, the record also shows that Cpl. Sevier saw the Escape pull into the driveway, and observed that Drury was the only person in the car. An inference that Drury operated the Escape is extremely reasonable. We agree that Sgt. Poole's almost immediate observation of Drury's slurred speech and the strong smell of alcohol created a reasonable suspicion that Drury operated a vehicle while intoxicated.[2]

Drury lastly contends that the officers would have lacked probable cause to suspect that she had committed a crime had she not been detained first for the purpose of securing the scene of Byron's arrest. The fact that Drury's first detention led to a second detention is inconsequential because the original detention was a reasonable non-investigatory detention. The officers' observations during the first detention may serve as the basis of the officers' reasonable suspicion that Drury committed a crime, so as to justify the second detention for the purposes of investigating that crime. *State v. Sparr*, 13 Neb.App. 144, 688 N.W.2d 913, 922 (2004).

In *State v. Sparr*, the Court of Appeals of Nebraska upheld a similar detention. *Id.* at 922. In that case, an officer lawfully detained the driver of a vehicle from which Sparr exited. *Id.* at 916. Sparr then entered an adjacent vehicle. *Id.* While investigating the driver, the officer ordered that Sparr leave her vehicle parked because it was within the immediate vicinity of the officer's investigation of the driver. *Id.* Following the arrest of the driver, the officer approached Sparr, observed evidence that she was intoxicated, and placed her under arrest. *Id.* The court held that Sparr's seizure was not unreasonable because her initial detention was a reasonable safety measure given the close proximity of Sparr's vehicle to the officer's investigation of the driver. *Id.* at 922. Because Sparr's initial detention was not unreasonable, the court held that it was immaterial that the officer only developed reasonable suspicion, for the purposes of the second investigatory seizure, as the result of evidence obtained during the initial non-investigatory seizure. *Id.* Therefore the court held that both seizures were constitutionally permissible. *Id.*

We find the *Sparr* Court's logic persuasive. Only evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule. *State v. Grayson*, 336 S.W.3d 138, 146 (Mo. banc 2011). However, as we held above, Cpl. Sevier's initial detention of Drury did not violate the Fourth Amendment. The observations made by Cpl. Sevier during Drury's initial detention are not, therefore, subject to the

---

**2.** Whether such evidence will satisfy the heightened burden of proof at trial is a question we do not consider.

exclusionary rule, and may form the basis of reasonable suspicion that a crime has been committed. *See Sparr,* 688 N.W.2d at 922. Accordingly, we hold that the second seizure was did not violate the Fourth Amendment because Cpl. Sevier had reasonable suspicion to believe Drury had committed the crime of driving while intoxicated.

Both detentions of Drury were reasonable seizures under the Fourth Amendment. The initial seizure was reasonably based upon a concern for officer safety, a seizure permissible under the Fourth Amendment. Further, Cpl. Sevier's subsequent reasonable suspicion that Drury committed the crime of driving while intoxicated was a constitutional basis for detaining Drury for the purposes of investigating that crime.

### Conclusion

Because the trial court's orders suppressing evidence obtained in connection with Drury's detention and dismissing all charges were clearly erroneous, we reverse and remand this matter to the trial court for proceedings consistent with this opinion.

SHERRI B. SULLIVAN and GLENN A. NORTON, JJ., concur.